IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| STATE OF COLORADO, *et al.*, ) <br> ) <br> Plaintiffs, ) <br> ) <br> v. ) <br> ) <br> WARNER CHILCOTT HOLDINGS ) <br> COMPANY III, LTD., *et al.*, ) <br> ) <br> Defendants. ) | Civil Action No. 1:05-cv-2182-CKK |

**PLAINTIFF STATES' MOTION FOR LEAVE TO
FILE PER SE MOTION FOR SUMMARY JUDGMENT**

Plaintiff States, by and through their Attorneys General, respectfully request leave of the Court to file a motion for summary judgment. In that motion, Plaintiff States intend to show that the agreement between Defendants Barr Pharmaceuticals, Inc. ("Barr") and Warner Chilcott[1] at issue in this action constitutes a per se violation of the Sherman Act and state antitrust laws.

Warner Chilcott sells the brand name oral contraceptive Ovcon. Barr filed applications with the U.S. Food & Drug Administration to market generic versions of Ovcon. After Barr filed these applications, Warner Chilcott and Barr entered into a written Option and License Agreement. Pursuant to this agreement, Warner Chilcott ultimately paid Barr $20 million. In return for this payment, Barr agreed, for a five year period, neither to market generic Ovcon in the United States nor to sell its product to any other company which might market generic Ovcon in the United States.

---

[1] "Warner Chilcott" as used in this brief refers to any or all of the Warner Chilcott defendants in this action.

Plaintiff States believe that, were the Court to review the written Barr-Warner Chilcott agreement, it would conclude that the agreement constitutes an illegal horizontal market allocation agreement. *See, e.g., Palmer v. BRG of Georgia, Inc.*, 498 U.S. 46 (1990). The determination as to whether or not horizontal agreements among competitors are per se illegal is a question of law. *See, e.g., Craftsmen Limousine, Inc. v. Ford Motor Co.*, 363 F. 3d 761, 772 (8th Cir. 2004). Many times, as in this case, the review of whether the agreement is per se illegal can be based solely upon the parties' status as horizontal competitors and a review of the terms of the agreement itself. For this reason, as the First Circuit observed, the per se issue "can often be resolved by the judge on a motion to dismiss or for summary judgment." *The Stop & Shop Supermarket Co. v. Blue Cross & Blue Shield of Rhode Island*, 373 F. 3d 57, 61 (1st Cir. 2004) (*citing Addamax Corp. v. Open Software Foundation, Inc.*, 152 F. 3d 48, 50-51 (1st Cir. 1998)).[2]

At the April 4 Initial Status Conference, the Court directed Plaintiff States to consult with Defendants to determine whether they planned to oppose our summary judgment motion with a Rule 56(f) affidavit requesting discovery. April 4, 2006 Initial Status Conference Transcript at pp. 52 & 56 ("April 4 Transcript") (Exhibit A). Plaintiff States did so, and Defendants responded that they would file Rule 56(f) affidavits in opposition to a per se summary judgment motion. *See* May 12,

---

[2] This case presents facts even more deserving of summary judgment than most recent pharmaceutical antitrust cases, as it presents no questions of patent validity or infringement. *See Valley Drug Co. v. Geneva Pharmaceuticals, Co.*, 344 F. 3d 1294, 1304 (11th Cir. 2003), *cert. denied*, 543 U.S. 939 (2004) (reversing grant of summary judgment by district court, but noting that the Circuit Court would "readily affirm" the district court's order that the market allocation agreement was per se illegal in absence of patent rights); *see also In re Cardizem CD Antitrust Litig.*, 332 F.3d 896, 909 n.14 (6th Cir. 2003) *(*affirming district court grant of summary judgment on plaintiffs' claim that agreement was per se illegal in case where patent rights were at issue).

2006, letter of William Shieber to Charles Koob and Karen Walker (Exhibit B); May 17, 2006, letter of Karen Walker to William Shieber (the "May 17 letter") (Exhibit C).

Plaintiff States believe that the Court's primary concern at the April 4 hearing was Rule 56(f). As set forth in the May 17 letter, Defendants' view is that the Court required the parties to agree on a set of undisputed, material facts before Plaintiffs could seek summary judgment. Defendants' position would make summary judgment in antitrust cases nearly impossible, since parties in such cases would rarely, if ever, be able to agree on what facts are material and undisputed. However, summary judgment is often granted in antitrust cases, even when the parties disagree as to what facts are material. *See, e.g., Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 585-87 (1986).

As this Court observed in *Law Office of Azita Mojarad v. Aguirre*, 2006 U.S. Dist. LEXIS 17090, *39 (D.D.C., March 27, 2006), "[c]ourts are afforded substantial discretion in ruling on requests for additional discovery pursuant to Rule 56(f)." A recent decision by the District of Columbia Circuit illustrates the breadth of this Court's discretion. On March 7, 2006, the D.C. Circuit issued its decision in *Messina v. Krakower*, 439 F. 3d 755 (D.C. Cir. 2006), affirming Judge Collyer's grant of summary judgment to the defendant. On appeal, plaintiff-appellant argued that Judge Collyer "erred by not granting her request for additional discovery" under Rule 56(f). *Id.* at 762. The Circuit court flatly rejected this argument. *Id.*

If the Court grants permission to do so, Plaintiff States intend to file a motion asserting the Barr-Warner Chilcott agreement is per se illegal. The motion will rely upon the written terms of the Barr-Warner Chilcott agreement and the admissions Defendants made in their answers to the Plaintiff States' complaint. Per se unlawful agreements cannot be justified on the basis of individual

circumstances, claimed efficiencies, procompetitive benefits or good intentions.[3]  For this reason, the Court can review the record in this case as it exists today and correctly conclude, as a matter of law, that the Barr-Warner Chilcott agreement is per se illegal.  Once this decision has been reached, any additional discovery Defendants might request under Rule 56(f) would be futile.  *See* XI H. Hovenkamp, *Antitrust Law* ¶ 1910(b), at 281 (1998) ("[O]nce the tribunal concludes that the restraint at issue is within the class [of per se illegal restraints], further inquiry into the merits of that particular restraint is unwarranted."); *see also Law Office of Azita Mojarad*, 2006 U.S. Dist. LEXIS 17090, at *40-41 (Rule 56(f) discovery request was "futile" because the discovery requested would not demonstrate that the agency acted in an arbitrary and capricious manner).

The May 17 letter supports Plaintiff States' position that a Rule 56(f) discovery request by Defendants would be futile.  Defendants argue that "numerous factual issues are raised by the allegations of the complaints and Warner Chilcott and Barr's defenses – including, *inter alia*, the background of the agreements, the supply circumstances faced by Warner Chilcott, the supply capacities of both Bristol Myers and Barr, the availability of competitive non-AB rated products, and the relevant market for contraceptive drugs." Exhibit C.  The availability of substitute products and the relevant market for contraceptive drugs are both factors going to proof of market power, which are irrelevant if the agreement is held to be illegal per se.  *See, e.g., FTC v. Superior Court Trial Lawyers Ass'n*, 493 U.S. 411, 432-36 (1990).  Information concerning the agreement's

---

[3] *See National Collegiate Athletic Ass'n v. Board of Regents*, 468 U.S. 85, 101 n. 23 (1984)("good motives will not validate an otherwise anticompetitive practice."); *Arizona v. Maricopa County Medical Society*, 457 U.S. 332, 349-351 & n. 19 (1982) (defendants not permitted to argue per se rule exceptions); *Catalano, Inc. v. Target Sales, Inc.*, 446 U.S. 643, 646-49 (1980) (justifications that per se illegal agreements might enhance competition or attract new entrants are foreclosed).

background and the parties' supply circumstances is already within the Defendants' control, and thus is not an appropriate subject for a Rule 56(f) request. *See, e.g., Mason Tenders District Council Pension Fund v. Messera*, 958 F. Supp. 869, 894-95 (S.D.N.Y. 1997); *see also Walters v. City Of Ocean Springs*, 626 F.2d 1317, 1321-22 (5th Cir. 1980).

Principles of judicial economy strongly favor the Court granting Plaintiff States leave to file the summary judgment motion. If the Court denies Plaintiff States' request for leave to file a summary judgment motion, Plaintiff States, the FTC, Defendants and a variety of private plaintiffs and third parties will engage in expensive and burdensome discovery. But this is just the type of needless discovery that the per se rule is meant to prevent. As the Supreme Court observed in *Arizona v. Maricopa County Medical Society*, 457 U.S. 332, 349-351 & n.19 (1982), the per se rule need not be re-justified for every industry as that ignores the rationale for the rule, "which in part is to avoid 'the necessity for an incredibly complicated and prolonged economic investigation. . . .'" Deciding Plaintiff States' summary judgment motion now would obviate most, if not all, unnecessary and ineffectual discovery.

Finally, public policy strongly favors the Court granting Plaintiff States leave to file their summary judgment motion. If Plaintiff States' analysis of the Barr-Warner Chilcott agreement is correct, the sooner that agreement is held to be per se illegal, the sooner consumers in the United States will be able to purchase generic Ovcon without further unnecessary delay.

## CONCLUSION

For the reasons set forth above, Plaintiff States' motion should be granted.

    Respectfully submitted,

    STATE OF COLORADO

    JOHN W. SUTHERS
    Attorney General

    /s/ Devin M. Laiho
    DEVIN M. LAIHO
    Assistant Attorney General
    Consumer Protection Section
    Attorneys for the State of Colorado
    1525 Sherman Street, 5th Floor
    Denver, Colorado 80203
    Telephone: 303-866-5079
    Devin.Laiho@state.co.us

    STATE OF TEXAS

    GREG ABBOTT
    Attorney General

    William J. Shieber
    Assistant Attorney General
    Texas Office of the Attorney General
    Antitrust and Civil Medicaid Fraud Division
    P.O. Box 12548
    Austin, Texas  78711-2548
    Telephone: (512) 463-1710
    William.Shieber@oag.state.tx.us

    On Behalf Of The Plaintiff States