# EXHIBIT 1

SIMPSON THACHER & BARTLETT LLP

425 LEXINGTON AVENUE
NEW YORK, N.Y. 10017-3954
(212) 455-2000

FACSIMILE (212) 455-2502

DIRECT DIAL NUMBER

212-455-3527

E-MAIL ADDRESS

arizzi@stblaw.com

<u>BY EMAIL</u>                                  June 21, 2006

Devin M. Laiho, Esq.
Assistant Attorney General
Office of the Attorney General
1525 Sherman Street, 5th Floor
Denver, CO  80203

Dear Devin:

   As a follow-up to our meet and confer by telephone last Friday, June 16, 2006, I write to confirm our understanding of the parties' positions regarding certain issues raised by the Plaintiff States' responses to the Defendants' First Set of Interrogatories and Document Requests.

   The Plaintiff States have expressly alleged, *inter alia*, that the Option and License Agreement between Barr and Warner Chilcott (the "Agreement") is anticompetitive and violates Section 1 of the Sherman Act and various state statutes and common law principles.  In their complaint, Plaintiff States specifically allege that the Agreement prevented the Plaintiff States from purchasing a less expensive version of Ovcon 35. Defendants have denied these allegations and have sought discovery from the Plaintiff States, including Medicaid program price data.  Specifically, Defendants have requested, among other things, Medicaid data sufficient to show the effect, if any, that generic entry has had on the prices paid by the Plaintiff States for similar combined hormonal contraceptives.  As we explained during our conversation, we believe that the generic entry of a combined hormonal contraceptive actually raises the price paid by the Plaintiff States and the requested data will speak directly to this point.

   Despite the allegations in the First Amended Complaint and the related discovery requests, the Plaintiff States have refused to provide the requested data under the theory that it is not relevant and "is not likely to lead to the discovery of admissible evidence."  The Plaintiff States also claim that some of the requested data is not in the possession of the Attorneys General, but rather in the hands of other state agencies.  As we pointed out on our call, discovery cannot be limited to the Attorneys General's offices because this action was brought by the sovereign states and the data is in the possession of agents of the sovereign states.

LOS ANGELES  PALO ALTO  WASHINGTON, D.C.  HONG KONG  LONDON  TOKYO

SIMPSON THACHER & BARTLETT LLP

Devin M. Laiho, Esq.                    -2-                    June 21, 2006

      To resolve this impasse and avoid any unnecessary costs, burdens or delays, we propose that the Plaintiff States stipulate that they have not been harmed by the Agreement, and that the Agreement has not prevented the Plaintiff States from purchasing a less-expensive generic version of Ovcon 35, and that had Barr introduced its generic version of Ovcon 35 on or after April 2004, the cost per unit of its generic to the Medicaid programs of the Plaintiff States would have been higher than for Ovcon 35. To that end, I attach a draft stipulation for your review. If the Plaintiff States will agree to the attached stipulation, the Defendants will agree not to move to compel the Plaintiff States to produce Medicaid-related documents and other Medicaid information in response to Document Request Nos. 11, 12 and 13 of Defendants' First Request for Production of Documents and Interrogatory No. 6 of Defendants' First Set of Interrogatories.

      Alternatively, the Defendants are willing, for now, to limit their request for Medicaid data to the materials requested by the attached spreadsheet. Of course, Defendants expressly reserve the right to seek full compliance with the discovery requests at a later date, if necessary.

      If the Plaintiff States are unwilling to sign the stipulation or produce the limited data requested in the spreadsheet, it will place substantial additional discovery burdens on the parties. The Defendants will be forced to move to compel production by the Plaintiff States while simultaneously subpoenaing over 35 state agencies that may be in possession of the requested data. This will be a time-consuming and costly exercise for all parties. Accordingly, please let me know by the time of our call this Friday at 2:00 p.m. (Eastern) if the Plaintiff States will agree to the proposed stipulation or, alternatively, to provide the specific information sought in the attached spreadsheet. Otherwise, we will consider our obligation to meet and confer with the Plaintiff States as fulfilled and reserve the right to seek the Court's intervention to compel the requested information.

*   *   *

      I look forward to speaking to you this Friday.

                          Very truly yours,

                          Annette C. Rizzi

Attachments

cc:    Thomas H. Brock, Esq.
       Karen N. Walker, Esq.
       Peter C. Thomas, Esq.

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| STATE OF COLORADO, *et. al.*,  )<br><br>Plaintiffs  )<br><br>v.  )<br><br>WARNER CHILCOTT HOLDINGS COMPANY  )<br>III, LTD., *et. al.*,  )<br><br>Defendants.  ) | Civil Action No: 1:05CV02182 (CKK) |

## STIPULATION

**IT IS HEREBY STIPULATED AND AGREED**, by and between the

undersigned counsel for defendants Warner Chilcott Holdings Company, III, Ltd., Warner

Chilcott Corporation, Warner Chilcott (US) Inc., Warner Chilcott Company, Inc. (together

"Warner Chilcott") and Barr Pharmaceuticals, Inc. ("Barr") (collectively the "Defendants") and

plaintiffs the States of Colorado, Maryland, Alaska, Arizona, Arkansas, California, Delaware,

Florida, Idaho, Illinois, Iowa, Kansas, Louisiana, Maine, Michigan, Minnesota, Mississippi,

Missouri, Nevada, New York, North Carolina, North Dakota, Ohio, Oklahoma, Oregon, Rhode

Island, South Carolina, Tennessee, Texas, Utah, and Vermont, the Commonwealths of Kentucky,

Massachusetts, and Virginia, and the District of Columbia (collectively the "Plaintiff States") as

follows:

**WHEREAS** on December 2, 2005, the Plaintiff States filed their First Amended

Complaint against the Defendants in the above action alleging that Defendants violated Section 1

of the Sherman Act and various state statutes and common law principles by entering into an

Option and License Agreement (the "Agreement");

**WHEREAS** on December 19, 2005, the Defendants filed their Answers to the First Amended Complaint and denied that they violated the Sherman Act or any of the state statutes or common law principles by entering into the Agreement;

**WHEREAS** the Defendants have served certain Document Requests and Interrogatories seeking discovery from the Plaintiff States, including Medicaid program price data;

**THEREFORE, IT IS STIPULATED AND AGREED THAT:**

1.    The Agreement did not prevent the Plaintiff States from purchasing a less-expensive generic version of Ovcon 35.

2.    Had Barr introduced its generic version of Ovcon 35 on or after April 2004 the cost per unit of its generic to the Medicaid programs of the Plaintiff States would have been higher than for Ovcon 35.

3.    The Plaintiff States have not been harmed by the Agreement.

4.    Based on the foregoing stipulations, the Defendants agree not to move to compel the Plaintiff States to produce Medicaid-related documents and other Medicaid information in response to Document Request Nos. 11, 12 and 13 of Defendants' First Request for Production of Documents and Interrogatory No. 6 of Defendants' First Set of Interrogatories.

5.    Each individual signing this Stipulation represents and warrants that he or she has full authority to do so on behalf of the Party he or she represents in the action.

6.    This Stipulation may be executed in counterparts, each of which shall be deemed an original, but all of which shall constitute one and the same Stipulation.

Dated:  June __, 2006

STATE OF COLORADO

JOHN W. SUTHERS
Attorney General

By: _____

    Devin M. Laiho
    Assistant Attorney General
    Consumer Protection Section
    1525 Sherman Street, 5th Floor
    Denver, CO  80203
    Tel: (303) 866-5079

*Counsel for the State of Colorado*

Dated:  June __, 2006

COMMONWEALTH OF VIRGINIA

JUDITH WILLIAMS JAGDMANN
Attorney General

By: _____

    Sarah Oxenham Allen
    Jennifer L. Gobble
    Assistant Attorneys General
    Antitrust & Consumer Litigation
    Section
    900 East Main Street
    Richmond, Virginia 23219
    Telephone: 804-786-6557

*Counsel for the Commonwealth of Virginia*

Dated:  June __, 2006

STATE OF MARYLAND

J. JOSEPH CURRAN, JR.
Attorney General

By: _____

    MEREDYTH SMITH ANDRUS
    Assistant Attorney General
    Ellen S. Cooper
    Chief, Antitrust Division

## NDC Numbers for Requested Drugs

The Defendants request the information outlined in the chart and definitions below for the generic and brand drugs listed in the following table. While reserving the right to request additional information at a later time, the Defendants agree to accept the below information on a blinded basis. Accordingly, subject to the provisions found in the chart and definitions below, the Defendants understand that Plaintiffs will not report the requested information by drug product names or NDC numbers.

Please supply data starting with first quarter 2001 to date, expanding the charts that follow to accommodate the data.

| | | | |
|---|---|---|---|
| Aranelle | 00555-9066 | Tri-Norinyl | 00025-0272; 00025-0274; 42987-0114; 42987-0015 |
| Aviane | 51285-0017; 54868-5356; 00555-9045 | Alesse | 00008-2576; 00008-0912 |
| Kariva | 54868-4742; 00555-9050 | Mircette | 51285-0114; 00052-0281; 12860-0281; 60889-0281 |
| Lessina | 00555-9014 | Levlite | 50419-0406; 50419-0408; 54868-4368; 12866-1163; 64259-1165 |
| Microgestin 1.5/30 | 52544-0631; 52544-0951 | Loestrin 1.5/30 | 51285-0082; 00071-0916; 00047-0534; 00071-0917; 51285-0083; 51285-0084; 60491-0366; 00047-0082; 00047-0083 |
| Microgestin 1/20 | 52544-0630; 52544-0950 | Loestrin 1/20 | 00071-0915; 51285-0079; 00071-0913; 51285-0080; 51285-0081; 60491-0365; |

2

| | | | 00047-0079;<br>00047-0080;<br>00047-0081 |
|---|---|---|---|
| Necon 7/7/7 | 52544-0936 | Ortho-Novum<br>7/7/7 | 00062-1781;<br>00107-1781;<br>00179-1298;<br>59564-0148;<br>53808-0032;<br>54868-0508 |
| Sprintec | 00555-9016;<br>54868-4828 | Ortho-Cyclen | 00062-1900;<br>00062-1901;<br>00107-1901;<br>54868-2606;<br>59564-0233 |
| Velivet | 54868-4828 | Cyclessa | 00052-0283;<br>12860-0283;<br>54868-4911;<br>60889-0283 |

## Definitions

"Drug Identification Number" designates all NDC numbers for a specific generic or brand drug, the reimbursement, rebate, and pricing information of which will be reproduced in that row. The Drug Identification Number must be the same for each generic drug and its AB-rated equivalent. In addition, each Plaintiff State must use the same Drug Identification Number for each generic or branded drug. For example, if Aranelle is designated as Drug Identification Number 1 in Chart I then the Drug Identification Number 1 must also be used for Tri-Norinyl in Chart II.

"Quarter/Year" refers to the quarter and year that will correspond with the data to be reproduced in that row, formatted as such: QYYYY. The Quarter/Year reported in column two ("Quarter/Year") on Chart I for each State should be reproduced in that same order in column two ("Quarter/Year") of Chart II.

"Units Reimbursed" refers to the total number of pills, both active and placebo, reimbursed by the State for the drug identified in column one ("Drug Identification Number") of Chart I or II during the quarter specified in column two ("Quarter/Year") of Chart I or II.

"Dollars Reimbursed" refers to the total dollars paid to pharmacists, excluding dispensing fees, by the State for the units of the drug identified in column one ("Drug Identification Number") of Chart I or II during the quarter specified in column two ("Quarter/Year") of Chart I or II.

"Dispensing Fees" refers to the total dollars paid to pharmacists in dispensing fees by the State for units dispensed of the drug identified in column one ("Drug Identification Number") of Chart I or II during the quarter specified in column two ("Quarter/Year") of Chart I or II.

"Manufacturer Rebate Dollars" refers to the total dollar amount of rebates paid to the State by the manufacturer for units dispensed of the drug identified in column one ("Drug Identification Number") of Chart I or II during the quarter specified in column two ("Quarter/Year") of Chart I or II.

"Federal Rebate Dollars" refers to the total dollar amount of rebates paid to the State by the federal government for units dispensed of the drug identified in column one ("Drug Identification Number") of Chart I or II during the quarter specified in column two ("Quarter/Year") of Chart I or II.

*"Brand AWP" refers to the average wholesale price during the quarter specified in column two ("Quarter/Year") of Chart II of the brand drug to which the generic drug identified in column one ("Drug Identification Number") of Chart II is AB-rated. The average wholesale price is a national average of list prices charged by wholesalers to pharmacies.

*"Brand WAC" refers to the wholesale acquisition cost during the quarter specified in column two ("Quarter/Year") of Chart II of the brand drug to which the generic drug identified in column one ("Drug Identification Number") of Chart II is AB-rated. The wholesale acquisition cost is the price paid by a wholesaler for a drug purchased from the wholesaler's supplier.

*"Brand AMP" refers to the average manufacturer price during the quarter specified in column two ("Quarter/Year") of Chart II of the brand drug to which the generic drug identified in column one ("Drug Identification Number") of Chart II is AB-rated.  The average manufacturer price is the average price paid to the manufacturer by wholesalers.


*To the extent that multiple NDC numbers exist for the same drug, please average the AWPs, WACs, or AMPS of the different NDC numbers, thereby providing one AWP, WAC, or AMP for each brand drug.

## CHART I: GENERIC NDCs

| State | 1. Drug Identification Number | 2. Quarter/ Year | 3. Units Reimbursed | 4. Dollars Reimbursed | 5. Dispensing Fee | 6. Manufacturer Rebate Dollars | 7. Federal Rebate Dollars |
|---|---|---|---|---|---|---|---|
| Alaska | 1 | | | | | | |
| | 2 | | | | | | |
| | 3 | | | | | | |
| | 4 | | | | | | |
| | 5 | | | | | | |
| | 6 | | | | | | |
| | 7 | | | | | | |
| | 8 | | | | | | |
| | 9 | | | | | | |
| Arizona | 1 | | | | | | |
| | 2 | | | | | | |
| | 3 | | | | | | |
| | 4 | | | | | | |
| | 5 | | | | | | |
| | 6 | | | | | | |
| | 7 | | | | | | |
| | 8 | | | | | | |
| | 9 | | | | | | |
| Arkansas | 1 | | | | | | |
| | 2 | | | | | | |
| | 3 | | | | | | |
| | 4 | | | | | | |
| | 5 | | | | | | |
| | 6 | | | | | | |
| | 7 | | | | | | |
| | 8 | | | | | | |
| | 9 | | | | | | |
| California | 1 | | | | | | |
| | 2 | | | | | | |

5

15

## CHART II: BRAND NDCs



| State | 1. Drug Identification Number | 2. Quarter/ Year | 3. Unit Reimbursement | 4. Dollars Reimbursed | 5. Dispensing Fees | 6. Manufacturer Invoice Dollar | 7. Estimated Rebate Dollars | 8. Brand Rebate % Basis | 9. Brand Rebate % AMP | 10. Estimated Rebate AMP |
|---|---|---|---|---|---|---|---|---|---|---|
| Alaska | 1 | | | | | | | | | |
| | 2 | | | | | | | | | |
| | 3 | | | | | | | | | |
| | 4 | | | | | | | | | |
| | 5 | | | | | | | | | |
| | 6 | | | | | | | | | |
| | 7 | | | | | | | | | |
| | 8 | | | | | | | | | |
| | 9 | | | | | | | | | |
| Arizona | 1 | | | | | | | | | |
| | 2 | | | | | | | | | |
| | 3 | | | | | | | | | |
| | 4 | | | | | | | | | |
| | 5 | | | | | | | | | |
| | 6 | | | | | | | | | |
| | 7 | | | | | | | | | |
| | 8 | | | | | | | | | |
| | 9 | | | | | | | | | |
| Arkansas | 1 | | | | | | | | | |
| | 2 | | | | | | | | | |
| | 3 | | | | | | | | | |
| | 4 | | | | | | | | | |
| | 5 | | | | | | | | | |
| | 6 | | | | | | | | | |
| | 7 | | | | | | | | | |
| | 8 | | | | | | | | | |
| | 9 | | | | | | | | | |
| California | 1 | | | | | | | | | |

# EXHIBIT 2

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

STATE OF COLORADO
by Attorney General John W. Suthers
1525 Sherman Street, Fifth Floor
Denver, Colorado 80203

COMMONWEALTH OF VIRGINIA
by Attorney General Judith Williams Jagdmann
900 East Main Street
Richmond, Virginia 23219

STATE OF MARYLAND
by Attorney General J. Joseph Curran, Jr.
200 St. Paul Street
Baltimore, Maryland 21202

STATE OF ALASKA
by Attorney General David W. Marquez
1031 W. 4th Avenue #200
Anchorage, Alaska 99501

STATE OF ARIZONA
by Attorney General Terry Goddard
1275 West Washington
Phoenix, Arizona 85007-2926

STATE OF ARKANSAS
by Attorney General Mike Beebe
323 Center Street, Suite 200
Little Rock, Arkansas 72201

STATE OF CALIFORNIA
by Attorney General Bill Lockyer
1515 Clay St.
Oakland, California 94612

STATE OF DELAWARE
by Attorney General M. Jane Brady
Carvel State Office Building
820 N. French Street
Wilmington, Delaware 19801

Civil Action 1:05-cv-02182-CKK

DISTRICT OF COLUMBIA
by Attorney General Robert J. Spagnoletti
441 Fourth Street, NW, Suite 450N
Washington, District of Columbia 20001

STATE OF FLORIDA
by Attorney General Charles J. Crist, Jr.
PL-01 The Capitol
Tallahassee, Florida 32399

STATE OF IDAHO
by Attorney General Lawrence Wasden
650 W. State Street, Lower Level
Boise, Idaho 83720-0010

STATE OF ILLINOIS
by Attorney General Lisa Madigan
100 West Randolph Street, 13th Floor
Chicago, Ilinois 60601

STATE OF IOWA
by Attorney General Thomas J. Miller
2nd Floor, Hoover Office Building
East 13th and Walnut
Des Moines, Iowa 50319

STATE OF KANSAS
by Attorney General Phill Kline
120 SW 10th Street, 2nd Floor
Topeka, Kansas 66612

COMMONWEALTH OF KENTUCKY
by Attorney General Gregory D. Stumbo
1024 Capital Center Drive
Frankfort, Kentucky 40601

STATE OF LOUISIANA
by Attorney General Charles C. Foti, Jr.
1885 N. 3rd Street, 4th Floor
Baton Rouge, Louisiana 70802

STATE OF MAINE
by Attorney General G. Steven Rowe
6 State House Station
Augusta, Maine 04333-0006

COMMONWEALTH OF MASSACHUSETTS
by Attorney General Thomas F. Reilly
One Ashburton Place
Boston, Massachusetts 02108

STATE OF MICHIGAN
by Attorney General Michael A. Cox
G. Mennen Williams Building, 6th Floor
525 W. Ottawa Street
Lansing, Michigan 48913

STATE OF MINNESOTA
by Attorney General Mike Hatch
102 State Capitol
St. Paul, Minnesota 55155-1609

STATE OF MISSISSIPPI
by Attorney General Jim Hood
Post Office Box 22947
Jackson, Mississippi 39225

STATE OF MISSOURI
by Attorney General Jeremiah (Jay) W. Nixon
P.O. Box 899
Jefferson City, MO 65102

STATE OF NEVADA
By Attorney General George J. Chanos
555 East Washington Avenue, Suite 3900
Las Vegas, Nevada 89101

STATE OF NEW YORK
by Attorney General Eliot Spitzer
120 Broadway, Suite 26C
New York, New York 10271-0332

STATE OF NORTH CAROLINA
by Attorney General Roy Cooper
9001 Mail Service Center
Raleigh, NC 27699-9001

STATE OF NORTH DAKOTA
by Attorney General Wayne Stenehjem
P.O. Box 1054
Bismarck, North Dakota 58502-1054

STATE OF OHIO
by Attorney General Jim Petro
Antitrust Section
150 East Gay Street, 20th Floor
Columbus, Ohio 43215

STATE OF OKLAHOMA
by Attorney General W.A. Drew Edmonson
4545 N. Lincoln Boulevard, Suite 260
Oklahoma City, Oklahoma 73105

STATE OF OREGON
by Attorney General Hardy Myers
1162 Court Street NE
Salem, Oregon 97301

STATE OF RHODE ISLAND
by Attorney General Patrick C. Lynch
150 South Main Street
Providence, Rhode Island 02903

STATE OF SOUTH CAROLINA
by Attorney General Henry D. McMaster
Rembert C. Dennis Building
1000 Assembly Street, Suite 501
Columbia, South Carolina 29211-1549

STATE OF TENNESSEE
by Attorney General Paul G. Summers
P.O. Box 20207
Nashville, Tennessee 37202-0207

STATE OF TEXAS
by Attorney General Greg Abbott
P.O. Box 12548
Austin, Texas 78711

STATE OF UTAH
by Attorney General Mark L. Shurtleff
160 East 300 South, Fifth Floor
Salt Lake City, Utah 84111

and

4

STATE OF VERMONT
by Attorney General William H. Sorrell
109 State Street
Montpelier, Vermont 05609-1001

PLAINTIFFS,

v.

WARNER CHILCOTT HOLDINGS
COMPANY III, LTD.
100 Enterprise Drive
Rockaway, New Jersey 07866

WARNER CHILCOTT CORPORATION
100 Enterprise Drive
Rockaway, New Jersey 07866

WARNER CHILCOTT (US) INC.
100 Enterprise Drive
Rockaway, New Jersey 07866

WARNER CHILCOTT COMPANY, INC.
Union Street, Km. 1.1
Fajardo, Puerto Rico 00738

and

BARR PHARMACEUTICALS, INC.
2 Quaker Road
Box 2900
Pomona, New York 10970

DEFENDANTS.

---

## FIRST AMENDED COMPLAINT

---

The states of Colorado, Maryland, Alaska, Arizona, Arkansas, California, Delaware,

Florida, Idaho, Illinois, Iowa, Kansas, Louisiana, Maine, Michigan, Minnesota, Mississippi,

Missouri, Nevada, New York, North Carolina, North Dakota, Ohio, Oklahoma, Oregon, Rhode

Island, South Carolina, Tennessee, Texas, Utah, and Vermont, the commonwealths of Kentucky,

Massachusetts and Virginia, and the District of Columbia, by their Attorneys General ("Plaintiff

States" or "States"), bring this action against Defendants Warner Chilcott Holdings Company III,

Limited, Warner Chilcott Corporation, Warner Chilcott (US), Inc., Warner Chilcott Company,

Inc., (collectively "Warner Chilcott") and Barr Pharmaceuticals, Inc. ("Barr") and make the

following allegations:

## SUMMARY OF COMPLAINT

1.  Warner Chilcott and Barr entered into an anticompetitive agreement not to compete,

in violation of the antitrust laws.

2.  Warner Chilcott is a pharmaceutical company that develops, manufactures, and

markets proprietary women's healthcare and dermatology prescription pharmaceutical products.

3.  Barr is a pharmaceutical company that develops, manufactures, and markets generic

and proprietary prescription pharmaceutical products.

4.  Warner Chilcott markets Ovcon, a proprietary prescription pharmaceutical product

that contains norethindrone and ethinyl estradiol as its active pharmaceutical ingredients.  Ovcon

is an oral contraceptive product prescribed to women for the prevention of pregnancy.

5.  Warner Chilcott is the exclusive marketer of Ovcon, pursuant to an agreement with

Bristol-Myers Squibb.

6.  Barr developed a generic version of Ovcon and submitted an abbreviated new drug

application ("ANDA") for generic versions of Ovcon with the U.S. Food and Drug

Administration ("FDA").

7.  On or about March 24, 2004, Warner Chilcott and Barr entered into an Option and

License Agreement (the "Agreement") not to compete.  Warner Chilcott exercised that option on

May 6, 2004.

6

8.   Prior to May 6, 2004, Barr planned on competing with Warner Chilcott by marketing its lower-priced generic version of Ovcon after obtaining FDA approval.

9.   The Agreement prevented Plaintiff States and other persons from purchasing a less-expensive generic version of Ovcon.

10. The States request a finding that Warner Chilcott and Barr violated state and federal antitrust and related laws, a permanent injunction barring Warner Chilcott and Barr from engaging in similar conduct in the future, other equitable relief, civil penalties, and/or other relief for injuries caused by the illegal Agreement.

## JURISDICTION AND VENUE

11. This Court has jurisdiction pursuant to Section 1 of the Sherman Act, 15 U.S.C. § 1 and Section 16 of the Clayton Act, 15 U.S.C. § 26, and 28 U.S.C. §§ 1331 and 1337.  In addition to pleading violations of federal antitrust law, the States also allege violations of state antitrust, consumer protection and/or unfair competition statutes and related state laws.  The States seek civil penalties and/or equitable relief under those state laws.

12. All claims under federal and state law are based upon a common nucleus of operative fact, and the entire action commenced by this Complaint constitutes a single case that would ordinarily be tried in one judicial proceeding.

13. This Court has jurisdiction of state law claims under 28 U.S.C. §1367(a), as well as under the principles of supplemental jurisdiction.  Supplemental jurisdiction will avoid unnecessary duplication and multiplicity of actions and should be exercised in the interests of judicial economy, convenience, and fairness.

14. Venue is proper in this Court under Section 12 of the Clayton Act, 15 U.S.C. § 22 and under 28 U.S.C. §§ 1391(b) and (c), because: (1) Warner Chilcott and Barr transact business and

corresponding Reference Listed Drug, but may contain other ingredients (such as colors and flavors) that are different. A generic drug is comparable to a Reference Listed Drug in dosage form, strength, route of administration, quality, performance characteristics and intended use. A generic drug must be bioequivalent to the corresponding Reference Listed Drug.

26. The Drug Price Competition and Patent Term Restoration Act of 1984, 21 U.S.C. § 355, (the "Hatch-Waxman Act") established a procedure that has often allowed generic drugs to enter the market earlier than had been possible in the past. The Hatch-Waxman Act allows a company to seek FDA approval to market a generic version of a Reference Listed Drug by filing an Abbreviated New Drug Application ("ANDA"). An ANDA is generally not required to include preclinical (animal) and clinical (human) data to establish safety and effectiveness.

27. Because the FDA has already determined that a Reference Listed Drug is safe and effective for use, an ANDA filer may rely on the safety and efficacy data previously provided for a specific Reference Listed Drug, so long as the ANDA filer sufficiently demonstrates to the FDA that its generic drug is bioequivalent to the Reference Listed Drug.

28. Generic versions of Reference Listed Drugs are usually sold at prices substantially below the prices charged for the Reference Listed Drugs. Plaintiff States and other persons save significant amounts of money by purchasing generic drugs.

**C.      Warner Chilcott's Ovcon Products**

29. Ovcon has been available to the general public as a prescription pharmaceutical product since approximately 1976.

30. Prior to January 26, 2000, Bristol-Myers Squibb Company ("BMS") manufactured, distributed, and marketed Ovcon in the United States.

10

57. In the absence of the anticompetitive Agreement, Barr would have begun marketing its product shortly after obtaining FDA approval.

58. In the absence of the competitive threat that Barr would have provided in a free marketplace, Ovcon consumers were required to continue purchasing the brand-name Ovcon product when a less expensive generic version would have otherwise been available.

59. If Barr had introduced its generic product into the market, the average price paid for Ovcon products would have decreased rapidly and substantially.

60. No company, other than Barr, has received FDA approval for a generic version of Ovcon.

61. The Agreement between Warner Chilcott and Barr destroyed the competition that is intrinsic to our market-based economy.

## TRADE AND COMMERCE

62. During the relevant period, Ovcon was sold throughout the United States.  Ovcon was transported across state lines and sold in each of the Plaintiff States.  The Defendants' unlawful activities alleged in this Complaint have occurred in and have had a substantial effect upon interstate commerce.

## ANTICOMPETITIVE EFFECTS OF DEFENDANTS' ILLEGAL CONDUCT

63. Warner Chilcott and Barr's Agreement not to compete was a naked restraint of trade with the purpose of stifling competition, and is anticompetitive.

64. The Agreement is anticompetitive pursuant to every relevant legal analysis.

65. Warner Chilcott and Barr's conduct had the purpose and effect of unreasonably and illegally restraining trade and preventing competition.

14

66. Warner Chilcott and Barr's Agreement to eliminate competition is not reasonably necessary to accomplish any procompetitive objective. The Agreement was not subsidiary to any procompetitive objective. Eliminating competition from Barr was the primary purpose of Warner Chilcott's unlawful Agreement with Barr.

67. The Defendants could have accomplished any of the purported competitive benefits of the Agreement by other less-restrictive means that would not have destroyed competition.

68. As a direct and proximate result of the illegal conduct alleged in this complaint, the Plaintiff States and other persons have not been and are not able to purchase generic versions of Ovcon, which would have been available at prices lower than those paid for Ovcon.

69. Warner Chilcott and Barr deprived Plaintiff States of the benefits of competition that the federal and state antitrust laws, consumer protection laws and/or unfair competition statutes and related state laws are designed to promote, preserve, and protect.

70. As a direct and proximate result of the unlawful conduct alleged above, Warner Chilcott has unjustly profited from the Agreement with Barr.

71. As a direct and proximate result of the unlawful conduct alleged above, Barr has unjustly profited from the Agreement with Warner Chilcott.

## CONSPIRACY IN VIOLATION OF SECTION 1 OF THE SHERMAN ACT

72. The Agreement between Warner Chilcott and Barr constitutes a restraint of trade in violation of Section 1 of the Sherman Act, 15 U.S.C. § 1 .

## SUPPLEMENTAL STATE LAW CLAIMS

73. Plaintiff State of Alaska repeats and realleges each and every allegation contained in paragraphs 1 through 72.

74. Defendants' acts violate, and Plaintiff State of Alaska is entitled to relief under, AS 45.50.471 and AS 45.50.562 - .596.

75. Plaintiff State of Arizona repeats and realleges each and every allegation contained in paragraphs 1 through 72.

76. Defendants' acts violate, and Plaintiff State of Arizona is entitled to relief under, Arizona Uniform State Antitrust Act, Arizona Revised Statutes section 44-1401 et seq.

77. Plaintiff State of Arkansas repeats and realleges each and every allegation contained in paragraphs 1 through 72.

78. Defendants' acts violate, and Plaintiff State of Arkansas is entitled to relief under, the Arkansas Deceptive Trade Practices Act, A.C.A. § 4-88-101, et seq. and the Arkansas Unfair Practices Act, A.C.A. § 4-75-301 et seq.

79. Plaintiff State of California repeats and realleges each and every allegation contained in paragraphs 1 through 72.

80. Defendants' acts violate, and Plaintiff State of California is entitled to relief under, the Cartwright Act, Business & Professions Code § 16700, et seq., and the California Unfair Competition Act, Bus. & Prof. Code § 17200, et seq.

81. Plaintiff State of Colorado repeats and realleges each and every allegation contained in paragraphs 1 through 72.

82. Defendants' acts violate, and Plaintiff State of Colorado is entitled to relief under, the Colorado Antitrust Act of 1992, § 6-4-101, et seq., Colo. Rev. Stat.

83. Plaintiff State of Delaware repeats and realleges each and every allegation contained in paragraphs 1 through 72.

16

114.  Defendants' acts violate, and Plaintiff State of Missouri is entitled to relief under, the Missouri Merchandising Practices Act, Revised Statutes of Missouri § 407.010 et seq., and the Missouri Antitrust Act, Revised Statutes of Missouri § 416.011 et seq.

115.  Plaintiff State of Nevada repeats and realleges each and every allegation contained in paragraphs 1 through 72.

116.  Defendants' acts violate, and Plaintiff State of Nevada is entitled to relief under the Nevada Unfair Trade Practice Act, Nev. Rev. Stat. § 598A.010 et seq.

117.  Plaintiff State of New York repeats and realleges each and every allegation contained in paragraphs 1 through 72.

118.  Defendants' acts violate, and Plaintiff State of New York is entitled to relief under, N.Y. Gen. Bus. Law §§ 340, 342, and 342-a.

119.  Plaintiff State of North Carolina repeats and realleges each and every allegation contained in paragraphs 1 through 72.

120.  Defendants' acts violate, and Plaintiff State of North Carolina is entitled to relief under, N.C. Gen. Stat. §§ 75-1, 75-1.1, 75-2, 75-2.1.

121.  Plaintiff State of North Dakota repeats and realleges each and every allegation contained in paragraphs 1 through 72.

122.  Defendants' acts violate, and Plaintiff State of North Dakota is entitled to relief under, the Uniform State Antitrust Act, N.D. Cent. Code § 51-08.1-01, et seq.

123.  Plaintiff State of Ohio repeats and realleges each and every allegation contained in paragraphs 1 through 72.

124.  Defendants' acts violate, and Plaintiff State of Ohio is entitled to relief under, Ohio's Antitrust Law, Ohio Revised Code, § 109.81 and 1331.01, et seq.

136. Defendants' acts violate, and Plaintiff State of Texas is entitled to relief under, the Texas Free Enterprise and Antitrust Act of 1983, Tex. Bus. & Com. Code § 15.01, et seq.

137. Plaintiff State of Utah repeats and realleges each and every allegation contained in paragraphs 1 through 72.

138. Defendants' acts violate, and Plaintiff State of Utah is entitled to relief under, the Utah Antitrust Act, Sections 76-10-911 through 76-10-926, Utah Code Annotated, as amended.

139. Plaintiff State of Vermont repeats and realleges each and every allegation contained in paragraphs 1 through 72.

140. Defendants' acts violate, and Plaintiff State of Vermont is entitled to relief under, the Vermont Consumer Fraud Act, 9 V.S.A. Section 2451, et seq.

141. Plaintiff Commonwealth of Virginia repeats and realleges each and every allegation contained in paragraphs 1 through 72.

142. Defendants' acts violate, and Plaintiff Commonwealth of Virginia is entitled to relief under, the Virginia Antitrust Act, Va. Code Ann. Section 59.1-9.5

## REQUEST FOR RELIEF

Accordingly, the Plaintiff States request that this Court:

1. Adjudge and decree that Defendants engaged in conduct in violation of Section 1 of the Sherman Act, 15 U.S.C. § 1;

2. Adjudge and decree that Defendants engaged in conduct in violation of each of the state statutes and common law enumerated in this Complaint;

3. Enjoin and restrain, pursuant to federal and state law, Defendants, their affiliates, assignees, subsidiaries, successors and transferees, and their officers, directors, partners, agents and employees, and all other persons acting or claiming to act on their behalf or in concert with

22

them, from continuing to engage in any anticompetitive conduct (including the anticompetitive

terms of the Agreement) and from adopting in the future any practice, plan, program or device

having a similar purpose or effect to the anticompetitive actions set forth above.;

 4. Award to Plaintiff States any other equitable relief as the Court finds appropriate to

redress Defendants' violations of state law;

 5. Award to each Plaintiff State the maximum civil penalties allowed by law;

 6. Award to each Plaintiff State its costs, including reasonable attorneys' fees; and

 7. Order any other relief that this Court deems proper.

DATED: December 2, 2005

Respectfully submitted,

PLAINTIFF STATES

STATE OF COLORADO
JOHN W. SUTHERS
Attorney General

/s/ Devin M. Laiho
DEVIN M. LAIHO
Assistant Attorney General

Consumer Protection Section
Attorneys for the State of Colorado
1525 Sherman Street, 5th Floor
Denver, Colorado 80203
Telephone: 303-866-5079
Devin.Laiho@state.co.us

COMMONWEALTH OF VIRGINIA
JUDITH WILLIAMS JAGDMANN
Attorney General
Sarah Oxenham Allen
Jennifer L. Gobble
Assistant Attorneys General
Antitrust & Consumer Litigation Section
Attorneys for the Commonwealth of Virginia
900 East Main Street

EXHIBIT 3

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF THE DISTRICT OF COLUMBIA

| | |
|---|---|
| FEDERAL TRADE COMMISSION<br><br>                          Plaintiff,<br><br>     v.<br><br>WARNER CHILCOTT HOLDINGS<br>COMPANY III, LTD., et al.<br><br>                          Defendants. | Civil Action No. 1:05-CV-02179-CKK |
| STATE OF COLORADO, et al.,<br><br>                          Plaintiffs,<br><br>     v.<br><br>WARNER CHILCOTT HOLDINGS<br>COMPANY III, LTD., et al.<br><br>                          Defendants. | Civil Action No. 1:05-CV-02182-CKK |

**PLAINTIFF FEDERAL TRADE COMMISSION'S AND PLAINTIFF
STATES' JOINT FIRST REQUEST FOR THE PRODUCTION OF DOCUMENTS
FROM DEFENDANT WARNER CHILCOTT**

Pursuant to Federal Rule of Civil Procedure 34, Defendant Warner Chilcott shall produce

one set of the documents described below within 30 days after service at the offices of the

Federal Trade Commission, c/o Bradley S. Albert, 601 New Jersey Avenue, NW, Washington,

DC 20580; and one set to Attorney General, c/o Devin Laiho, 1525 Sherman Street, 5th Floor,

Denver, CO 80203.

24.   All documents discussing companies other than Bristol-Myers Squibb or Barr that would or could act as a potential manufacturer for Ovcon or Ovcon Chewable.

25.   All documents that relate in any way to the risk of cross-contamination in those circumstances in which an Oral Contraceptive placebo pill is the same size as an Oral Contraceptive active ingredient pill.

26.   For each rebate period since January 1, 2000, and with respect to Warner Chilcott's sales of Ovcon, all documents that relate in any way to the Medicaid Rebate Program under 42 U.S.C. § 1396r-8, including, but not limited to:

   a.   agreements with the Department of Health and Human Services, or the Centers for Medicaid and Medicare Services;

   b.   submissions of Warner Chilcott to the Department of Health and Human Services or the Center for Medicaid and Medicare Services or the Plaintiff States pursuant to the Medicaid Rebate Program; and

   c.   calculations of the "manufacturer's best price," "average manufacturer price," "the manufacturer's average sales price," the "manufacturer's wholesale acquisition cost," and "sales made at a nominal price," as those terms are defined in 42 U.S.C. § 1396r-8.

27.   All documents that relate in any way to Warner Chilcott's detailing and distribution of Ovcon samples, including, but not limited to:

20

EXHIBIT 4



UNITED STATES OF AMERICA
**FEDERAL TRADE COMMISSION**
WASHINGTON, D.C. 20580

Garth W. Huston, Esq.
Direct Dial: (202) 326-3695
E-mail: ghuston@ftc.gov

May 30, 2006

**VIA OVERNIGHT DELIVERY**

Richard S. Egosi, Esq.
Senior Vice President and Legal Counsel
Teva Pharmaceutical Industries Ltd.
425 Privet Road
Horsham, PA 19044

Re: Federal Trade Commission, *et al.,* v. Warner Chilcott Holdings Company III, Ltd., *et al.,* Civil Action Nos. 1:05-cv-2179-CKK and 1:05-cv-2182-CKK (D.D.C.)

Dear Mr. Egosi:

The Federal Trade Commission and 35 State Attorneys General have filed a complaint in federal court in the District of Columbia against Warner Chilcott and Barr Laboratories. Pursuant to my telephone conversation with you earlier today, enclosed please find a subpoena issued to Teva Pharmaceutical Industries Ltd. and courtesy copies of the protective order and case management order issued by the Court. We appreciate your willingness to agree to accept service via overnight delivery on behalf of Teva Pharmaceutical Industries Ltd.

Please contact me if you have any questions. Thank you, in advance, for your cooperation.

Sincerely,

Garth W. Huston

Enclosures

cc:    Contact Attorneys (via website service)

AO88 (Rev. 1/94) Subpoena in a Civil Case

## Issued by the
# UNITED STATES DISTRICT COURT

Eastern                    DISTRICT OF                    Pennsylvania

Federal Trade Commission, et.al.                    **SUBPOENA IN A CIVIL CASE**

**V.**

Warner Chilcott Holdings Company III, Ltd., et al.

Case Number:[1]

1:05-CV-2179-CKK

TO:  Teva Pharmaceutical Industries Ltd., c/o Richard S. Egosi           1:05-CV-2182-CKK
     Sr. V.P. & Legal Counsel; Teva Pharmaceuticals USA Inc.
     425 Privet Road                                                     United States District Court
     Horsham, PA 19044                                                   for the District of Columbia

☐  YOU ARE COMMANDED to appear in the United States District court at the place, date, and time specified below to
    testify in the above case.

| PLACE OF TESTIMONY | COURTROOM |
|---|---|
|  |  |
|  | DATE AND TIME |
|  |  |

☐  YOU ARE COMMANDED to appear at the place, date, and time specified below to testify at the taking of a deposition
    in the above case.

| PLACE OF DEPOSITION | DATE AND TIME |
|---|---|
|  |  |

☑  YOU ARE COMMANDED to produce and permit inspection and copying of the following documents or objects at the
    place, date, and time specified below (list documents or objects):

See Attachment A

| PLACE         See Attachment A | DATE AND TIME    See Attachment A |
|---|---|
|  |  |

☐  YOU ARE COMMANDED to permit inspection of the following premises at the date and time specified below.

| PREMISES | DATE AND TIME |
|---|---|
|  |  |

   Any organization not a party to this suit that is subpoenaed for the taking of a deposition shall designate one or more officers,
directors, or managing agents, or other persons who consent to testify on its behalf, and may set forth, for each person designated,
the matters on which the person will testify. Federal Rules of Civil Procedure, 30(b)(6).

| ISSUING OFFICER'S SIGNATURE AND TITLE (INDICATE IF ATTORNEY FOR PLAINTIFF OR DEFENDANT) | DATE |
|---|---|
| *Bradly S. Albert*   Attorney for Plaintiff FTC | May 7a, 2006 |

ISSUING OFFICER'S NAME, ADDRESS AND PHONE NUMBER

Bradley S. Albert; 601 New Jersey Avenue, N.W., Washington, DC 20001; (202) 326-3670

(See Rule 45, Federal Rules of Civil Procedure, Parts C & D on next page)

[1] If action is pending in district other than district of issuance, state district under case number.

AO88  (Rev. 1/94) Subpoena in a Civil Case

## PROOF OF SERVICE

| | DATE | PLACE |
|---|---|---|
| SERVED | May 30, 2006 | Teva Pharmaceutical Industries Ltd.<br>425 Privet Road<br>Horsham, PA  19044 |

| SERVED ON (PRINT NAME) | MANNER OF SERVICE |
|---|---|
| Richard S. Egosi, Esq. | Overnight delivery |

| SERVED BY (PRINT NAME) | TITLE |
|---|---|
| Garth W. Huston | Attorney |

## DECLARATION OF SERVER

I declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in the Proof of Service is true and correct.

Executed on ___May 30, 2006___
DATE

_Garth W. Huston_
SIGNATURE OF SERVER
601 New Jersey Avenue, NW
Washington, DC. 20001
ADDRESS OF SERVER

---

Rule 45, Federal Rules of Civil Procedure, Parts C & D:

(c) PROTECTION OF PERSONS SUBJECT TO SUBPOENAS.

(1) A party or an attorney responsible for the issuance and service of a subpoena shall take reasonable steps to avoid imposing undue burden or expense on a person subject to that subpoena. The court on behalf of which the subpoena was issued shall enforce this duty and impose upon the party or attorney in breach of this duty an appropriate sanction which may include, but is not limited to, lost earnings and reasonable attorney's fee.

(2) (A) A person commanded to produce and permit inspection and copying of designated books, papers, documents or tangible things, or inspection of premises need not appear in person at the place of production or inspection unless commanded to appear for deposition, hearing or trial.

(B) Subject to paragraph (d) (2) of this rule, a person commanded to produce and permit inspection and copying may, within 14 days after service of subpoena or before the time specified for compliance if such time is less than 14 days after service, serve upon the party or attorney designated in the subpoena written objection to inspection or copying of any or all of the designated materials or of the premises. If objection is made, the party serving the subpoena shall not be entitled to inspect and copy materials or inspect the premises except pursuant to an order of the court by which the subpoena was issued. If objection has been made, the party serving the subpoena may, upon notice to the person commanded to produce, move at any time for an order to compel the production. Such an order to comply production shall protect any person who is not a party or an officer of a party from significant expense resulting from the inspection and copying commanded.

(3) (A) On timely motion, the court by which a subpoena was issued shall quash or modify the subpoena if it

(i) fails to allow reasonable time for compliance,
(ii) requires a person who is not a party or an officer of a party to travel to a place more than 100 miles from the place where that person resides, is employed or regularly transacts business in person, except that, subject to the provisions of clause (c) (3) (B) (iii) of this rule, such a person may in order to attend

trial be commanded to travel from any such place within the state in which the trial is held, or

(iii) requires disclosure of privileged or other protected matter and no exception or waiver applies, or
(iv) subjects a person to undue burden.

(B) If a subpoena

(i) requires disclosure of a trade secret or other confidential research, development, or commercial information, or
(ii) requires disclosure of an unretained expert's opinion or information not describing specific events or occurrences in dispute and resulting from the expert's study made not at the request of any party, or
(iii) requires a person who is not a party or an officer of a party to incur substantial expense to travel more than 100 miles to attend trial, the court may, to protect a person subject to or affected by the subpoena, quash or modify the subpoena, or, if the party in who behalf the subpoena is issued shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship and assures that the person to whom the subpoena is addressed will be reasonably compensated, the court may order appearance or production only upon specified conditions.

(d) DUTIES IN RESPONDING TO SUBPOENA.

(1) A person responding to a subpoena to produce documents shall produce them as they are kept in the usual course of business or shall organize and label them to correspond with the categories in the demand.

(2) When information subject to a subpoena is withheld on a claim that it is privileged or subject to protection as trial preparation materials, the claim shall be made expressly and shall be supported by a description of the nature of the documents, communications, or things not produced that is sufficient to enable the mmmdemanding party to contest the claim.

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| FEDERAL TRADE COMMISSION, et al.<br><br>                          Plaintiff,<br><br>        v.<br><br>WARNER CHILCOTT HOLDINGS<br>COMPANY III, LTD., et al.<br><br>                          Defendants. | Civil Action No. 1:05-CV-02179 (D.D.C.)<br>                        1:05-CV-02182 (D.D.C.)<br><br>Judge Colleen Kollar-Kotelly<br><br>NOTICE OF SUBPOENA DUCES<br>TECUM TO TEVA PHARMACEUTICAL<br>INDUSTRIES, LTD. |

PLEASE TAKE NOTICE that, pursuant to Fed. R. Civ. P. 26, 34(c), and 45, notice is hereby given that Plaintiffs in the above-captioned case, by and through their counsel, request that Teva Pharmaceutical Industries, Ltd., produce the documents described in Attachment A attached hereto by June 29, 2006 at the offices of the Federal Trade Commission, 601 New Jersey Avenue, N.W., Washington, D.C. 20001, or such place as may be agreed upon by counsel.

N.    If you have any questions, please contact Bradley S. Albert at 202-326-3670.


## DOCUMENTS REQUESTED

1.    From January 1, 1998, for each stock keeping unit of Teva's Contraceptive Products, all

Electronically Stored Information relating to any measure of the sales, price, revenues,

profit, and costs of each stock keeping unit, including, but not limited to:

a.    gross and net sales in units and dollars;

b.    gross number and dollar value of promotional Sample units distributed;

c.    gross and net profits in dollars;

d.    cost of goods sold in dollars;

e.    sales, promotion, or marketing expenses; and

f.    rebates, credits, allowances, charge-backs, and any other adjustments to price.


2.    For each rebate period since January 1, 2000, and with respect to the sales of Teva

Contraceptive Products, all documents relating to the Medicaid Rebate Program under 42

U.S.C. § 1396r-8, including, but not limited to:

a.    agreements with the Department of Health and Human Services, or the Centers for

Medicaid and Medicare Services;

b.    any documents submitted by Teva to the Department of Health and Human

Services or the Center for Medicaid and Medicare Services or the Plaintiff States

pursuant to the Medicaid Rebate Program; and

c.    calculations of the "manufacturer's best price," "average manufacturer price,"

13

"manufacturer's average sales price," "manufacturer's wholesale acquisition cost," and "sales made at a nominal price," as those terms are defined in 42 U.S.C. § 1396r-8.

3.    All documents relating to pricing plans, pricing policies, pricing forecasts, pricing strategies, pricing analyses, pricing projections, and pricing decisions regarding Teva Contraceptive Products.

4.    All documents relating to the actual or projected effect that a Generic Contraceptive would have on the sales, revenues, or profits of a Branded Contraceptive.

5.    All documents relating to the number of actual or expected refills for each new contraceptive product prescription, including, but not limited to, differences between Sampled Branded Contraceptives, non-Sampled Branded Contraceptives, and Generic Contraceptives.

6.    All analyses, studies, surveys, or other data concerning the use of prescription contraceptive products, including, but not limited to:

    a.    the average Tenure of a woman using a Branded Contraceptive;

    b.    the average Tenure of a woman using a Generic Contraceptive;

    c.    the average Tenure of a woman using a contraceptive that is Sampled to physicians; and

14