UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| STATE OF COLORADO, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>WARNER CHILCOTT HOLDINGS COMPANY III, LTD., et al.,<br><br>Defendants. | Civil Action No. 1:05-cv-02182-CKK |

PLAINTIFF STATES' RESPONSE IN OPPOSITION TO DEFENDANTS'
JOINT MOTION TO COMPEL ANSWERS TO INTERROGATORIES
AND THE PRODUCTION OF DOCUMENTS

The Plaintiff States, by their Attorneys General, respectfully oppose the Defendants' Joint Motion to Compel Answers to Interrogatories and the Production of Documents.

## Introduction

The Plaintiff States filed this law enforcement action by their Attorneys General, seeking injunctive relief and civil penalties for the defendants' violations of state and federal laws. The Plaintiff States are not bringing this action on behalf of any Medicaid agencies, and do not represent Medicaid agencies as plaintiffs in this action. If the defendants want to obtain information in the possession, custody, or control of any non-parties, including Medicaid agencies, the defendants must seek the information pursuant to Fed. R. Civ. Proc. 45 and any other rules governing discovery from non-parties. Even if the defendants ultimately seek the information they desire through the proper persons, the information they seek is irrelevant and is

not reasonably calculated to lead to the discovery of admissible evidence. We respectfully request that this Court not require that the information be produced.

**I.      Medicaid Agencies are Not Parties to this Law Enforcement Action**

      **A.      Independent Constitutional Authority of the Attorneys General**

The Plaintiff States brought this action "in their sovereign and/or quasi-sovereign capacities through their Attorneys General as the Plaintiff States' chief civil law enforcement officials seeking relief 1) pursuant to Section 16 of the Clayton Act, 15 U.S.C. § 26, as parens patriae, and 2) pursuant to state law as a civil law enforcement action." Pl. States' Second Am. Compl. ¶ 21.[1] The Plaintiff States are not bringing this action to recover any damages suffered by any public entities, and do not represent any such entities as plaintiffs in this litigation.

Unlike the government of the United States, which operates through a single executive officer (the President) with appointed subordinates (including the Attorney General of the United States), the governments of the Plaintiff States utilize "plural executive" systems with multiple independent executive officials.[2] As provided by the Constitutions and laws of the Plaintiff States, Governors and Attorneys General are independent from each other,[3] have unique roles within their governments, and have control over separate governmental functions.[4] The Attorneys General are not subject to removal or discipline by the Governors.[5]

---

[1] The Plaintiff States' Second Amended Complaint was filed on July 14, 2006, and is currently pending approval from this Court. The defendants consented to the filing of the Plaintiff States' Second Amended Complaint.
[2] The Attorneys General in all of the Plaintiff States are independently elected by the voters of the states, with the following exceptions: Alaska (appointed by the Governor), District of Columbia (appointed by the Mayor), Maine (elected by the Legislature), and Tennessee (appointed by the state Supreme Court).
[3] The Attorneys General of Alaska and the District of Columbia are appointed respectively by the Governor of Alaska and the Mayor of the District of Columbia, and may have a different degree of independence than the Attorneys General of the other Plaintiff States.
[4] See Exhibit A for a list of relevant citations for each of the Plaintiff States.
[5] The Attorneys General of Alaska and the District of Columbia are exceptions. See Alaska Stat. §§ 39.05.020-.030 and D.C. Code § 1-301.111.

Under the plural executive system, the Governors of the Plaintiff States are generally in control of agencies and departments of the state (including Medicaid agencies). In contrast, the Attorneys General of the Plaintiff States are independently accountable for overseeing the legal affairs of the states. "The New York State Constitution in its infinite wisdom contemplated a separation of powers within the executive branch of government." *New York v. National Railroad Passenger Corp. (New York v. Amtrak)*, 233 F.R.D. 259, 263 (N.D.N.Y. 2006). "For reasons of federalism and comity, we give great deference to the State and its Legislature to define how governmental entities are to be separate and distinct and how they may relate to one another as a whole; this is 'uniquely an exercise in state sovereignty.'" *New York v. Amtrak*, 233 F.R.D. at 264 (citing *Lyes v. City of Riviera Beach, Fla.*, 166 F.3d 1332, 1343-44 (11th Cir.1999)).

The constitutional separation of state executive powers is not "hyper-technical" or a "legal fiction" as the defendants claim in their motion.[6] Rather, it is a fundamental principle upon which state governments are based, and is critical to an understanding of the capacity in which the Plaintiff States are bringing their law enforcement action.

### B. Authority to Commence Litigation

The right of a governmental entity to sue is derived from the enabling legislation (or similar predicate) for such entities. In this action, that right is conferred by statutes authorizing the Attorneys General – not other executive agencies – to bring an action in the name of the state to enforce state and federal antitrust laws.[7]

---

[6] Defs.' Mot. to Compel at 4.
[7] See Exhibit B for a list of relevant citations for each of the Plaintiff States.

The Attorneys General do not need to consult with or obtain consent from the Governors,[8] from any state agencies, or from any other entities before filing such a law enforcement action pursuant to their own independent constitutional or statutory authority. This action was brought "by the[] Attorneys General[,]"[9] not "on behalf" of other agencies as the defendants baselessly contend in their motion. Defs.' Mot. to Compel at 4, 7.

Because state agencies are generally under the independent control of the Governors or other executives, such agencies do not automatically become "plaintiffs" when the Attorneys General choose to exercise independent authority and file a lawsuit pursuant to their own constitutional or statutory authority. *See United States v. American Tel. & Telegraph Co.* (*U.S. v. AT&T*), 461 F.Supp. 1314, 1335 (D.D.C. 1978).[10] State agencies under the control of the Governors of the Plaintiff States have their own enabling legislation, and may have their own independent authority to sue for damages. When such an agency chooses to file a lawsuit, the agency may be required to seek legal representation from the Attorney General. Accordingly, Medicaid agencies in several of the Plaintiff States communicated with, and provided reports requested by, the Attorneys General of those states in anticipation of possible litigation. However, the Attorneys General did not ultimately undertake representation of such agencies as plaintiffs in this litigation. Rather, the Attorneys General proceeded only pursuant to their independent statutory authority to enforce the antitrust laws.

---

[8] The Attorneys General of Alaska and the District of Columbia are exceptions. See Alaska Stat. §§ 39.05.020-.030 and D.C. Code § 1-301.111.
[9] Pl. States' Second Am. Compl. at 5; *see* Pl. States' Second Am. Compl. at 1-6.
[10] *See also People* ex rel. *Lockyer v. Superior Court*, 122 Cal. App. 4th 1060, 1078, 19 Cal. Rptr. 3d 324 (Cal. Ct. App. 2004) (concluding that the People, by prosecuting this action, are not deemed to have possession, custody or control over documents of any state agency. Such documents must be obtained by a subpoena).

### C. The Attorney General's Filing of a Law Enforcement Action Does Not Open Independent Public Entities to Discovery by the Defendants

This Court's holding in the sole case relied upon by the defendants regarding the production of documents from non-party government agencies, *U.S. v. AT&T*, illustrates precisely why the defendants' motion should be denied. The defendants' misapplication of that case results from the defendants' apparent failure to recognize the fundamental structure of the plural executive system utilized by the Plaintiff States. See Defs.' Mot. to Compel at 11-13.

In *U.S. v. AT&T*, this Court held that the defendants were not entitled to discovery from the Federal Communications Commission because that agency operated under the authority of an executive structure independent from the executive structure that included the Attorney General.

> In short, both as a conceptual and as a practical matter, the Federal Communications Commission is free from executive control and not answerable to instructions from the President or the Attorney General. To hold it to be a part of the "plaintiff" herein would not only contradict over forty years of legal history, but would effectively leave the conduct of this lawsuit, and perhaps of other actions brought by the government, vulnerable to a virtual veto by one or more independent regulatory agencies.

*U.S. v. AT&T*, 461 F.Supp at 1336.

Earlier this year, the U.S. District Court for the Northern District of New York analyzed a similar discovery issue in a case brought by the New York State Department of Transportation. *New York v. Amtrak* was brought in the name of the state, by its Commissioner of Transportation, just as this case was brought in the name of the state, by its Attorneys General. *See New York v. Amtrak*, 233 F.R.D at 259. In *New York v. Amtrak*, the defendants sought discovery from the Office of the State Comptroller ("OSC"), an executive agency independent from the executive branch who brought the lawsuit (the Governor of New York), just as the defendants in this case

seek discovery from Medicaid agencies, which are independent from the executives who brought this action (the Attorneys General). *See New York v. Amtrak*, 233 F.R.D. at 262-264. The *New York v. Amtrak* court held that, if the defendants wanted to obtain discovery from a non-party executive agency, the proper means of obtaining that information was pursuant to Fed. R. Civ. Proc. 45. *See New York v. Amtrak*, 233 F.R.D. at 270. [11]

Just as the *U.S. v AT&T* and *New York v. Amtrak* courts denied defendants' requests to obtain discovery from non-party independent agencies, the Plaintiff States respectfully request that this Court similarly deny the defendants' request to obtain discovery through Rule 34 from non-party independent Medicaid agencies.

## II.    The Medicaid Data Requested by the Defendants is Irrelevant[12]

### A.    Medicaid Reimbursement Data is not Relevant to Any Issues Identified by the Defendants

#### 1.    The Plaintiff States are not Alleging Damage to Medicaid Agencies

The first sentence in the introduction of the defendants' motion to compel illustrates that the defendants fail to comprehend what the Plaintiff States are alleging in this case. The defendants are requesting "certain Medicaid data that will enable Defendants to show whether the Plaintiff States were, in fact, damaged…" Defs.' Mot. to Compel at 2. However, the Plaintiff States are not alleging that non-party Medicaid agencies were – or were not – damaged, as the Attorneys General do not represent Medicaid agencies as plaintiffs in this action. The Plaintiff States are seeking injunctive relief under federal

---

[11] *See also People* ex rel. *Lockyer*, 122 Cal. App. 4th at 1080. (concluding that the defendant was required to serve subpoenas directly upon the non-party state agencies from which the information was sought).

[12] As a preliminary matter, the Plaintiff States emphasize that any non-party must be provided with due process, and must be given an opportunity to respond and/or object to any requests for the production of documents (on relevance or other grounds), as such non-party deems appropriate.

6

law arising from injury to the Plaintiff States' general economies, and Medicaid data is neither relevant, nor reasonably calculated to lead to the discovery of admissible evidence, to the issue of whether the general economies of the Plaintiff States were injured by the defendants' anticompetitive conduct. Rather, harm to the general economy is measured by evidence of harm to competition in the form of fewer competing sellers, less consumer choice, and ultimately higher prices for purchasers in the Plaintiff States.

### 2. The Plaintiff States Have Only Requested Medicaid Data to Rebut Irrelevant Allegations Made by the Defendants

The defendants falsely claim that the Plaintiff States "recognize the relevance" of Medicaid data. Defs.' Mot. to Compel at 3. To the contrary, the Plaintiff States will withdraw their requests for Medicaid-related information if the defendants withdraw their own requests for Medicaid-related information. The Plaintiff States have sought such information to refute the defendants' irrelevant claims.

### B. The Defendants' Agreement is Anticompetitive Independent of Any Effect on Medicaid Agencies

The defendants have made the curious claim that the availability of generic drugs somehow harms non-party Medicaid agencies, and assert that argument as a reason for needing discovery from such agencies. Defs.' Mot. to Compel at 8, 10. However, even if the defendants' claims were true, such claims would still have no relevance whatsoever to this litigation.

The Plaintiff States are not making a claim for non-party Medicaid agencies, and the relief sought by the Plaintiff States is unrelated to damages that were incurred by such agencies. In their parens patriae capacity under federal law, the States are acting in "an interest apart from

7

that of particular individuals who may be affected." *Georgia v. Pennsylvania R.R. Co.*, 324 U.S. 439, 451 (1945).

### C.     Medicaid Data is Not Necessary for Per Se Analysis

Finally, even if the defendants are correct in asserting that their agreement somehow decreased certain reimbursement rates paid by non-party Medicaid agencies, Medicaid data is still irrelevant. The Supreme Court has previously rejected lower prices as a defense for an anticompetitive agreement. *See Arizona v. Maricopa County Medical Society*, 457 U.S. 332 (1982). In *Maricopa*, defendants formed a medical society where participating doctors entered a maximum price agreement. Defendants argued that prices were lowered as a result. However, the agreement's anticompetitive potential stems from the fact that the agreement eliminates competition among the collaborating doctors, thus "justifies [the agreement's] facial invalidation even if procompetitive justifications are offered for some." *Maricopa*, 457 U.S. at 351. The court further rejected the argument that the per se rule must be rejustified for every industry that has not been subject to significant antitrust litigation because it "ignores the rationale for per se rules, which is in part to avoid 'the necessity for an incredibly complicated and prolonged economic investigation. . . .'" *Maricopa*, 457 U.S. at 351.

Like the medical society in *Maricopa*, the defendants hope to justify their anticompetitive conduct by somehow fashioning an argument that Medicaid would pay more for Ovcon if a generic version were available. However, the defendants successfully eliminated competition from a generic manufacturer, allowing Warner Chilcott to maintain its position as the sole provider of Ovcon. The defendants entered into a geographic market allocation arrangement between horizontal competitors, allocating control over Ovcon and its FDA-approved

8

bioequivalent generic version in the United States to Warner Chilcott. *See Palmer v. BRG of Georgia, Inc.*, 498 U.S. 46, 49-50 (1990) (holding, on certiorari, that market allocation agreement between competitors illegally restrained trade in violation of Sherman Act). This violates the Sherman Act's intrinsic premise that competition is desirable. It also violates the more specific provisions of various state antitrust laws, which allow the Attorneys General of certain Plaintiff States to bring their law enforcement actions either civilly or criminally without proof of injury to any person.[13]

### III.   Plaintiff States' Proposed Compromise

The Plaintiff States met with the defendants over the telephone on June 16, 2006, to discuss our discovery disagreement. During that discussion, and in the letter sent to Devin Laiho from Annette Rizzi on June 21, 2006,[14] the only reason advanced by the defendants for needing the disputed information was the defendants' interpretation of certain allegations made in the First Amended Complaint. The Plaintiff States could not agree to the defendants' proposed stipulation, because it is false. However, in an effort to clarify the language and alleviate the concerns articulated by the defendants, the Plaintiff States drafted a Second Amended Complaint. Unfortunately, the modifications did not satisfy the defendants, who then came up with additional reasons why they needed the disputed information. The Plaintiff States' Second Amended Complaint was filed on July 14, 2006, and is currently pending approval from this Court.

---

[13] *See, e.g.,* Colo. Rev. Stat. § 6-4-112 ("The attorney general may bring a civil action on behalf of the state to seek the imposition of a civil penalty for *any violation of this article*"), Colo. Rev. Stat. § 6-4-117 ("The attorney general shall prosecute all criminal proceedings *for violations of this article*. … Any person … who violates section 6-4-104, 6-4-105, or 6-4-106 is guilty of a felony…"; *Cf.* Colo. Rev. Stat. §  6-4-111(2) ("The attorney general may bring a civil action on behalf of any governmental or public entity, with the written consent of such entity, *injured, either directly or indirectly*, in its business or property…")(Requiring a showing of injury when bringing an action on behalf of a public entity, but not when bringing a law enforcement action)(emphasis added to each citation).
[14] Attached as Exhibit C.

9

**Conclusion**

The Plaintiff States have brought this law enforcement action by their Attorneys General,[15] pursuant to the statutory authority vested in the Attorneys General to independently file actions against companies that violate state and federal antitrust laws.

The defendants' attempts to redefine the entire structure of the executive branch of state government must be rejected. If the Defendants wish to require any non-party governmental entities – including Medicaid agencies – to produce documents, they must provide any such entities with requests that are compliant with the Federal Rules of Civil Procedure governing non-parties, and must give those entities their own opportunities to respond.

The Plaintiff States have, subject to their previously stated objections, complied with the interrogatories and document requests submitted to them by the defendants. The Plaintiff States are not required by the Federal Rules of Civil Procedure to search for documents in the possession, custody, or control of non-parties. Accordingly, the defendants' motion to compel should be denied.

DATED: July 24, 2006

---

[15] *See* Pl. States' Compl. at 1-6, Pl. States' First Am. Compl. at 1-6, Pl. States' Second Am. Compl. at 1-6.

<u>Respectfully submitted,</u>

PLAINTIFF STATES

STATE OF COLORADO
JOHN W. SUTHERS
Attorney General

<u>/s/ Devin M. Laiho</u>
DEVIN M. LAIHO
Assistant Attorney General

Consumer Protection Section
Attorneys for the State of Colorado
1525 Sherman Street, 5th Floor
Denver, Colorado 80203
Telephone: 303-866-5079
Devin.Laiho@state.co.us