IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

FEDERAL TRADE COMMISSION, et al.,

Plaintiffs,

v.

WARNER CHILCOTT HOLDINGS
COMPANY III, LTD., et al.

Defendants.

Civil Action No. 1:05-CV-02179-CKK

Civil Action No. 1:05-CV-02182-CKK

BARR PHARMACEUTICALS, INC.'S OPPOSITION
TO GOVERNMENT PLAINTIFFS' JOINT MOTION TO COMPEL
DEFENDANT BARR TO PRODUCE DOCUMENTS

Barr Pharmaceuticals, Inc. ("Barr") opposes the FTC's and State Plaintiffs (collectively "Government Plaintiffs") motion to compel massive searches for voluminous documentation of drugs other than Ovcon 35, the subject of these proceedings.

In this case, the Federal Trade Commission and the State Plaintiffs challenge as anticompetitive an exclusive supply agreement between Barr and Warner Chilcott regarding Ovcon, a contraceptive sold by defendant Warner Chilcott. The *only* product covered by the agreement plaintiffs challenge is Ovcon. Notwithstanding this fact, Government Plaintiffs have requested massive amounts of discovery regarding *all* of Barr's products. Government Plaintiffs have since conceded that their requests for documents regarding *all* of Barr's products was overbroad, but they still request virtually every piece of paper company-wide regarding *any* of Barr's contraceptive products. Because women's health products in general and contraceptive products in particular are a specialty of Barr's, these requests would require massive searches for documents relating to some twenty-five separate products.

The only rationale Government Plaintiffs give for such onerous demands are that Barr contends that the "relevant product market" for antitrust purposes is broader than just Ovcon. It hardly follows that plaintiffs need discovery of every document regarding every other product simply because defendants assert that the relevant product market encompasses products other than Ovcon. In fact, State Plaintiffs contend that such information is not necessary — in their pending motion for leave to file a premature summary judgment motion, they argue that no discovery is needed and that the agreement can be analyzed on its face. (*See* State Pls.' Mot. for Leave to File Per Se Summ. J. Mot. at 4 (Civ. Action No. 1:05-CV-02182-CKK, D.E. #44.)

Even if some information regarding other products were deemed relevant, the requests served by Government Plaintiffs are clearly overly broad and unduly burdensome. Barr has repeatedly offered to produce a reasonable sampling of products or specific categories of information regarding other contraceptives, but Government Plaintiffs have refused to compromise in any way. Accordingly, Barr regrettably requests that the Court deny Government Plaintiffs' Motion.

## BACKGROUND

Government Plaintiffs seek an inordinate amount of information regarding some twenty-five products manufactured by Barr *other than* the drug that is the subject of this case — Ovcon 35. In their motion, Government Plaintiffs insist that Barr be compelled to provide discovery on such other drugs in response to 23 requests, summarized below:

- Request No. 12:  seeking all documents relating to the effect *any* contraceptive product would have on the sales, revenues, or profits of *any* Barr contraceptive product;

- Request No. 13:  seeking all documents relating to *any* Barr contraceptive product and the Medicaid Rebate Program;

- Request No. 14:  seeking all documents relating to the distribution of samples of *any* Barr contraceptive product;

- Request No. 22: seeking all documents relating to the risk of placebo cross-contamination with respect to *any* Barr contraceptive product;

- Request No. 23: seeking all documents relating to Barr's compliance with current Good Manufacturing Practices with respect to *any* Barr contraceptive product;

- Request No. 24: seeking documents regarding Barr's production capacity with respect to *any* Barr contraceptive product;

- Request No. 25: seeking documents regarding *all* products manufactured on any production line capable of being used to produce any Barr contraceptive product;

- Request No. 26: seeking documents relating to costs and revenues for *any* Barr contraceptive product;

- Request No. 27: seeking all agreements relating to the manufacture or supply of *any* drug product to another company;

- Request No. 28: seeking all documents regarding production schedules for *any* Barr manufacturing line capable of producing Ovcon;

- Request No. 29: seeking all documents regarding the effect of the introduction of *any* oral contraceptive product on the distribution of samples of *any* Barr contraceptive product;

- Request No. 30: seeking all documents relating to Barr's distribution of samples of *any* Barr contraceptive product;

- Request No. 32: seeking all IMS reports or data for *any* contraceptive product;

- Request No. 33: seeking all ImpactRX reports or data for *any* contraceptive product;

- Request No. 34: seeking all documents regarding the sales, price, revenue, profit, and expenses for each SKU of *any* Barr contraceptive product;

- Request No. 35: seeking all documents relating to pricing of *any* Barr contraceptive products;

- Request No. 36: seeking all forecasts, plans, etc., regarding generic substitution with *any* Barr contraceptive products;

- Request No. 37: seeking all studies or surveys regarding *any* contraceptive products;

- Request No. 38: seeking all agreements involving the manufacture or supply of *any* Barr product (subsequently limited to contraceptive products);

- Request No. 39: seeking all documents relating to the advantages or disadvantages of entering into an exclusive supply agreement regarding *any* product (subsequently limited to contraceptive products);

- Request No. 40: seeking all documents relating to the advantages or disadvantages of entering into a non-exclusive supply agreement regarding *any* product (subsequently limited to contraceptive products);

- Request No. 41: seeking a one-month supply of *any* Barr contraceptive product; and

- Request No. 42: seeking all documents relating to the benefits of *any* generic product.

(*See* Pl. FTC's and Pl. States' Joint First Req. for the Produc. of Docs. from Def. Barr Pharmaceuticals, Inc. at 17-24 (attached as Ex. A).)

These requests would require Barr to virtually turn the company "upside down" to search for documents relating to a multitude of products. Notwithstanding the burden and lack of relevance of this information, Barr is willing to produce documents in response to Request Numbers 14, 22, 27, 30, 37, 38, 39, 40, and 42. Moreover, Barr has no burden or relevance objection to Request Number 41 and did not object to this request on the grounds that it related to products other than Ovcon. Rather, Barr indicated that it is not permitted by law to provide the plaintiffs with prescription drug products. In addition, Barr has made repeated attempts to offer compromises to plaintiffs that would provide for a limited and reasonable amount of information regarding other contraceptive products, yet FTC counsel has refused any compromise. (*See* June 27, 2006 Letter from K. Walker to T. Brock (attached as Ex. B); June 29, 2006 Letter from K. Walker to T. Brock (attached as Ex. C); June 29, 2006 Letter from T. Brock to K. Walker (attached as Ex. D).)

I.    **BARR IS WILLING TO PROVIDE APPROPRIATE DISCOVERY REGARDING OTHER CONTRACEPTIVE PRODUCTS AND HAS DONE SO.**

Barr has repeatedly offered plaintiffs reasonable discovery regarding products other than Ovcon (the only drug involved in this case).  *First*, Barr offered to produce documents constituting a reasonable sampling of contraceptive products and to withdraw its objection to the production of other contraceptive product information with regard to certain of the plaintiffs' requests.  (*See* Ex. B (proposing several compromises to resolve Government Plaintiffs' threatened motion to compel).)  As an initial matter, Barr offered:

> [T]o consider a compromise that would include a reasonable scope of documents regarding other key contraceptive products (such as Loestrin, Nordette, Kariva, and Norethindrone).

> \* \* \* \* \*

> I asked that you indicate what the Government Plaintiffs believe is the core information they seek regarding relevant markets, but you refused.  In an attempt to reach a compromise, *Barr is willing to provide reasonable discovery regarding other contraceptive products* — specifically, Barr would consider withdrawing its "Ovcon only" objection with respect to all responses with the exception of numbers 13, 26 and 32-36.  As to those Requests, Barr would be willing to provide discovery (as described above) on a reasonable sample of other products or to provide summary transactional information, or any other reasonable scope limitation you may suggest.

(*See* Ex. B (emphasis added).)

Plaintiffs refused this compromise, refused to make any counter-offer, and refused to respond to Barr's request for an identification of key information regarding other contraceptive products that plaintiffs needed.  (*See* Ex. D.)  Barr again attempted to reach a compromise with this offer:

> You indicate in your letter that Barr's proposal — which attempted to identify and include specific and significant contraceptive products we in good faith believed would be of interest to the Government Plaintiffs — is not acceptable.  You state that the need

for documents on other contraceptive products relates to the issue of "interchangeability" of other contraceptive products. Barr is willing to work with you to define an appropriate scope of such documents. However, it is simply unreasonable to require Barr to search for and produce every single document in the company relating to the approximately 22 contraceptive products Barr markets.

In light of your comments and our good faith desire to reach a compromise, *Barr is willing to search for and produce documents on all other contraceptive products relating to substitutability with other products.* This would accommodate both sides in terms of relevancy and burden.

(*See* Ex. C (emphasis added).)

In light of these repeated offers and invitations for plaintiffs to specify the needed information pertinent to the relevant product market issue, it is clear Barr has been willing to provide reasonable discovery in this case. Plaintiffs' intransigence should not be rewarded by requiring Barr to perform herculean searches for tangential information.

In fact, in its second production in these coordinated cases, produced today, Barr has produced over 265,000 pages of documents regarding *other* contraceptive products (in addition to the more than 21,500 pages Barr already produced regarding Ovcon in response to the Government Plaintiffs' prior document requests).

## II.    PLAINTIFFS HAVE REFUSED TO PRODUCE DISCOVERY REGARDING OTHER CONTRACEPTIVE PRODUCTS.

State Plaintiffs objected to defendants' request for Medicaid data, which seeks information on the exact same subject as Government Plaintiffs' *own* requests. For example, in their Request Number 13, plaintiffs requested all of Barr's Medicaid data regarding *any* Barr contraceptive products. (*See* Ex. A at 17-18.) In contrast, State Plaintiffs have objected to producing any Medicaid data of their own regarding contraceptive products, *including data*

*regarding Ovcon*. (*See* Pl. States' Resp. in Opp'n to Defs.' J. Mot. to Compel Answers to Interrogs. and Produc. of Docs. at 1 (Civ. Action No. 1:05-CV-02182-CKK, D.E. #54.).) Likewise, the private plaintiffs in this case — direct and indirect purchasers — have objected to and have failed to produce any information regarding drugs other than Ovcon.[1] It is patently unfair, and quite hypocritical, for plaintiffs to require Barr to search for and produce information regarding products other than Ovcon while simultaneously refusing to provide reciprocal discovery.

## III.    THE INFORMATION REQUESTED REGARDING OTHER CONTRACEPTIVE PRODUCTS IS NOT RELEVANT.

The vast amount of information Government Plaintiffs have requested regarding other products is irrelevant. Government Plaintiffs contend that the Ovcon supply agreements between Barr and Warner Chilcott are a *per se* horizontal market allocation. (*See* State Pls.' Mot. for Leave to File Per Se Summ. J. Mot. at 4 (Civ. Action No. 1:05-CV-02182-CKK, D.E. #44.) Under their theory, Barr's conduct or business regarding other products is not relevant to proving the unlawfulness of the Ovcon agreements. In fact, Government Plaintiffs have asserted that even further discovery *regarding Ovcon* is unnecessary because only the agreement and the circumstances surrounding them are relevant. (*Id.* at 4.)

Plaintiffs argue in their Motion to Compel that the information sought regarding other products is relevant because Barr disputes plaintiffs' assertion that the relevant product market is limited to Ovcon (as plaintiffs contend). However, it certainly does not follow that, because the

---

[1]    *See* Third Party Payor Pls.' Resp. to Def. Warner Chilcott's First Req. for Produc. of Docs. ¶ 7 (attached as Ex. E); Meijer Inc. and Meijer Distrib., Inc.'s Resp. and Objections to Barr Pharmaceuticals, Inc.'s First Req. for Prod. Of Docs. ¶ 8 (attached as Ex. F); *see also* July 25, 2006 Letter from K. Walker to K. Landau (attached as Ex. G).

parties to an antitrust case dispute the relevant product market definition, that production of all documents regarding all products is suddenly mandated. Under plaintiffs' logic, they would need all documents from all manufacturers who manufacture or market *any* contraceptive product — some 100 or more products.

Moreover, it is clearly a blatant exaggeration to argue that all documents regarding all contraceptive products are needed to address the single element of relevant product market in this case. Under the antitrust laws, plaintiffs must allege a relevant market "limited to the geographic area in which the parties effectively compete and to those products or services which are in fact reasonably interchangeable with one another." *Southern Pac. Communications Co. v. Am. Tel. & Tel. Co.*, 556 F. Supp. 825, 871 (D.D.C. 1982) (internal citations omitted). The relevant market provides the basis for the Court to assess the net anticompetitive effects of the challenged conduct under the Rule of Reason. *See Queen City Pizza, Inc. v. Domino's Pizza, Inc.*, 124 F.3d 430, 437 (3d Cir. 1997).

For antitrust purposes, the relevant product market is measured as "commodities reasonably interchangeable by consumers for the same purposes." *United States v. E.I. du Pont de Nemours & Co.*, 351 U.S. 377, 395 (1956). Products need not be identical to be reasonably interchangeable:

> Interchangeability implies that one product is roughly equivalent to another for the use to which it is put; while there may be some degree of preference for the one over the other, either would work effectively. A person needing transportation to work could accordingly buy a Ford or a Chevrolet automobile, or could elect to ride a horse or bicycle, assuming those options were feasible.

*Queen City Pizza*, 124 F.3d at 437 (internal citations omitted).

Accordingly, at most, the only discovery needed by plaintiffs regarding market definition is evidence regarding the interchangeability of Ovcon and other contraceptive products. Barr has already offered to provide such information to plaintiffs. (*See* Exs. B and C.)

Further, plaintiffs' claim that all documents regarding all of Barr's contraceptive products are necessary to evaluate whether the generic Ovcon restraint is ancillary to the supply agreement belies all logic. Even if, as plaintiffs state in their motion, "Barr would have the incentive to cut off the supply of Ovcon to Warner Chilcott in order to divert the demand for Ovcon to Barr's other contraceptive products," there is no reason plaintiffs need every single contraceptive-related document in order to respond properly. Plaintiffs themselves state later in the motion that "we need discovery relating to Barr's profitability and the costs of producing, marketing, and distributing its other contraceptives." (*See* Gov't Pls.' Joint Mot. to Compel at 2) Although this statement is still overbroad and unduly burdensome, plaintiffs themselves have already narrowed the field and basically acknowledged that discovery not related to profitability and marketing, producing and distributing costs is irrelevant.

## IV.    THE DISCOVERY SOUGHT REGARDING OTHER CONTRACEPTIVE PRODUCTS IS UNDULY BURDENSOME.

The discovery requested by the Government Plaintiffs would be extremely burdensome. For example, reasonable searches for responsive business, transactional, and planning documents for just *four* other contraceptive products has thus far resulted in the production of over 265,000 pages of documents (produced today to plaintiffs). Searching the *entire* company for *all* documents relating to *any* of Barr's contraceptive products (without regard to the magnitude of the product, when and whether it is even still marketed in significant quantities, etc.), would be extremely burdensome and yield little or no probative evidence whatsoever.[2] Where, as here, the

---

[2]    Indeed, Barr markets approximately 75 products. And, among the company's key generic products are warfarin sodium and oral contraceptives. (*See* www.barrlabs.com/generic/keyproducts (attached as Ex. H).) Moreover, female health care products in general, and contraceptives in particular, are a major focus of Barr's business — Barr currently markets approximately 25 different contraceptive products. Requiring Barr to search the entire company records for documents that may pertain to or mention any one of these 25 products would be immensely burdensome and costly and yield little or no probative evidence.

immense burden imposed far outweighs the likelihood of obtaining relevant information, such discovery should not be permitted. *North Carolina Right to Life, Inc. v. Leake*, 231 F.R.D. 49, 51 (D.D.C. 2005) ("limiting discovery is appropriate when the burden of providing the documents outweighs the need for it").

## CONCLUSION

For the foregoing reasons, Barr respectfully requests that plaintiffs' Motion to Compel be denied.   In the alternative, Barr submits that it should be required to produce responsive information only with respect to Request Numbers 14, 22, 27, 30, 37, 38, 39, 40, and 42. Finally, if plaintiffs are permitted to seek broad discovery on products other than Ovcon, they should bear the search and production costs involved because their discovery request imposes an undue burden upon Barr. [3]

Date:   July 28, 2006                            Respectfully submitted,


                                  /s/  Karen N. Walker
                                 Karen N. Walker (D.C. Bar # 412137)
                                 Mark L. Kovner (D.C. Bar #  430431)
                                 Chong S. Park (D.C. Bar # 463050)

                                 KIRKLAND & ELLIS LLP
                                 655 Fifteenth Street, N.W.
                                 Washington, District of Columbia  20005
                                 (202) 879-5000
                                 (202) 879-5200 (fax)

                                 *Counsel for Barr Pharmaceuticals, Inc.*

---

[3]    *See* FED. R. CIV. P. 26 advisory committee's note (2006) ("The good cause inquiry and consideration of the Rule 26(b)(2)(C) limitations are coupled with the authority to set conditions for discovery.  The conditions may take the form of limits on the amount, type, or sources of information required to be accessed and produced. The conditions may also include payment by the requesting party of part or all of the reasonable costs of obtaining information from sources that are not reasonably accessible.").