IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| STATE OF COLORADO, et al.,<br><br>        Plaintiffs,<br><br>  v.<br><br>WARNER CHILCOTT HOLDINGS<br>COMPANY III, LTD., et al.,<br><br>        Defendants. | Civil Action No. 1:05-CV-02182<br><br>Judge Colleen Kollar-Kotelly |

**MEMORANDUM OF LAW IN SUPPORT OF WARNER CHILCOTT'S
MOTION TO STRIKE THE EXPERT REPORT OF RICHARD P. DICKEY**

  Defendants Warner Chilcott Holdings Company III, Ltd., Warner Chilcott Corporation, Warner Chilcott (US) Inc., and Warner Chilcott Company, Inc. (together, "Warner Chilcott" or "Defendants"), respectfully submit this memorandum of law in support of their motion to strike as untimely the expert "rebuttal" report of Dr. Richard P. Dickey or, alternatively, for leave to file a report in response in order to avoid unfair prejudice to Defendants.

**INTRODUCTION**

  The Plaintiff States (collectively, "Plaintiffs" or "States") submitted the expert report of Dr. Richard P. Dickey on January 8, 2007, nearly one month after the parties were to exchange opening expert reports and only two weeks before depositions are scheduled to begin. Cleverly, Plaintiffs titled this opinion as a "rebuttal," even though its subject matter was an affirmative opinion on the relevant product market definition, which could and should have been offered on December 11, 2006, when the parties simultaneously exchanged initial expert reports. Because the opinions offered by Dr. Dickey are not solely or even primarily intended to rebut

expert opinions offered by Warner Chilcott's experts in their opening reports, the Plaintiff States have violated the November 11, 2006 scheduling order of this Court and Rule 26 of the Federal Rules of Civil Procedure.

By all appearances, Plaintiffs' decision to refrain from having Dr. Dickey express any opinions on December 11th was tactical. In an attempt to avoid unnecessary motion practice, Warner Chilcott offered to depose Dr. Dickey before determining whether a response was necessary. *See* 1/11/07 Letter from J. Craver to E. Hoffmann (attached hereto as Exhibit A). Plaintiffs, however, are unwilling under any circumstance to allow Defendants to rebut the findings of their previously undisclosed witness, giving Defendants no choice but to file this motion.[1]

### ARGUMENT

Well before trial, parties in a federal civil action are required to disclose the identity and qualifications of the experts they have retained to testify at trial. *See* Fed. R. Civ. P. 26(a)(2). In addition, parties must exchange written reports containing "a complete statement of all opinions to be expressed and the basis and reasons therefor." Fed. R. Civ. P. 26(a)(2)(B). The purpose of the federal rule mandating the advance disclosure of expert materials is to "prevent unfair surprise at trial and to permit the opposing party to prepare rebuttal reports, to depose the expert in advance of trial, and to prepare for depositions and cross examination at

---

[1]  On January 17, 2006, following a meet and confer with Defendants held pursuant to Local Civil Rule 7(m), the Plaintiff States offered to produce Dr. Dickey for deposition in Washington, D.C. on February 15th. While fully reserving its rights on this motion, Warner Chilcott will proceed to take Dr. Dickey's deposition on that day. Taking his deposition, however, in no way avoids the unfair prejudice that will result if the States are permitted to present Dr. Dickey without an opportunity for Warner Chilcott to sponsor surrebuttal expert testimony.

trial." *Minebea Co. v. Papst*, 231 F.R.D. 3, 5-6 (D.D.C. 2005) (*citing Coles v. Perry*, 217 F.R.D. 1, 4 (D.D.C. 2003)); *see* 1993 Advisory Committee Notes to Rule 26(2).

Timely disclosure in accordance with Rule 26(a)(2) is a condition precedent to use of the expert's opinion at trial. Indeed, Federal Rule of Civil Procedure 37(c) provides sanctions for a party's failure to comply. *See* Fed. R. Civ. P 37(c) ("A party that without substantial justification fails to disclose information required by Rule 26(a) . . . is not, unless such failure is harmless, permitted to use as evidence at a trial, at a hearing, or in a motion any witness or information not so disclosed."). According to the schedule established by this Court, the parties were obliged to exchange the expert reports and information contemplated by Federal Rule of Civil Procedure 26(a)(2) on December 11, 2006.

On that date, Plaintiffs submitted the report of Professor Daniel L. Rubinfeld, who provided affirmative testimony on the question of the relevant product market definition. Thus, Professor Rubinfeld opined that other oral contraceptive products are not close substitutes for Ovcon 35 and, thus, do not provide the same constraint on the exercise of market power as would a generic Ovcon. *See* Expert Report of Daniel L. Rubinfeld, ¶ 13. Specifically, Professor Rubinfeld opined that:

- "[I]t appears that patients switch out of Ovcon and into other oral contraceptives ***primarily for clinical reasons***." *Id.* ¶ 13 (emphasis added).
- "[E]vidence produced in this case indicates that ***most switches occur for clinical reasons***, and not because of price." *Id.* ¶ 65 (emphasis added).
- "The evidence that patients switch between products does not necessarily indicate that patients view the products to be interchangeable. Indeed, if a woman switches away from a product because of unacceptable side effects or other clinical issues, she may not view that product to be a clinical substitute, much less an economic substitute, for an alternative product that she can tolerate. Evidence that patients switch products may demonstrate only that

        patients must search to find products that are appropriate for their medical needs." *Id.* ¶ 66.[2]

That Plaintiff States' proffered expert evidence on the question of the relevant product market definition—an issue fundamental to this case—was hardly surprising. It reflected the States' understanding that the issue was hotly disputed, and that they could not "pull their punches" and wait until the time of rebuttal reports to sponsor expert evidence on that issue.

      For its part, Warner Chilcott sponsored two expert reports supporting a much broader market definition than Professor Rubinfeld's. *See* Expert Report of Sumanth Addanki, § I.C (concluding that the relevant market included all combined hormonal contraceptive ("CHC") products); Report of Henry G. Grabowski, ¶ 9 (concluding that branded CHCs such as Ovcon 35 compete both with generic CHCs and other brand CHCs).[3] Again, this initial exchange of expert reports clearly demonstrates both sides' understanding that product market definition (whether extremely narrow or somewhat broader), a concept essential to most antitrust cases, was at issue here. Unfortunately, however, the States were pulling their punches.

      On January 8, 2007, the parties exchanged expert rebuttal reports. Warner Chilcott submitted rebuttal reports for four of their disclosed experts, directly addressing the assertions made in Plaintiffs' opening reports. One of Plaintiffs' initially disclosed experts, Professor Rubinfeld, submitted a report responding to each of the Defendants' experts.[4]

---

[2]    In addition, Professor Rubinfeld cited *Managing Contraceptive Pill Patients*, a text authored by Dr. Dickey, as support for all of his statements regarding the chemical compositions, dosages, indications, and side effects of contraceptive products. *See* Expert Report of Daniel L. Rubinfeld, ¶¶ 35-37, 38-39 & nn.25-29, 31-32.

[3]    Dr. Addanki and Professor Grabowski found that the relevant product market was limited to CHCs containing 35 mcg or less of ethinyl estradiol. *See* Expert Report of Sumanth Addanki, n.19; Report of Henry G. Grabowski, n.9.

[4]    The Plaintiff States also submitted the rebuttal report of Frank Ecock.

However, in a move that cannot be reconciled with the mandatory disclosure requirements delineated in Federal Rule of Civil Procedure 26(a)(2), the Plaintiff States also filed a report by a medical doctor, Dr. Richard Dickey, who offered market definition opinions to the effect that Ovcon 35 is not fully medically interchangeable with other oral contraceptives.

Federal Rule of Civil Procedure 26(a)(2)(c) contemplates rebuttal testimony if the evidence is intended "*solely* to contradict or rebut" other expert testimony. It does not grant parties a license to withhold expert evidence that plainly could and should have been submitted as part of Plaintiffs' case in chief. In a word, Rule 26 does not permit a litigant to sandbag an opponent. Even a cursory review of Dr. Dickey's report reveals that, although he disagrees with Warner Chilcott's experts general propositions regarding market definition, he offers no rebuttal evidence. In fact, the body of his report does not contain a single cross-reference to any of the expert reports proffered by Defendants, nor does it point to one proposition within Defendants' expert reports his statements are purportedly intended to "rebut." *Compare* Expert Rebuttal Report of Professor Daniel L. Rubinfeld (citing to Defendants' expert reports in nearly every paragraph in the body of the report); Rebuttal Expert Report of Frank Ecock (same). Instead, Dr. Dickey's report suggested that:

- "The biological activity of an oral contraceptive is a result of the combined activities of the estrogen and progestin components. Because of the differences in the makeup of these components, each oral contraceptive formulation has a different pattern of biological activity." Expert Report of Richard P. Dickey, M.D., Ph.D., ¶ 21.
- "From a medical and patient management standpoint, oral contraceptive pills are not necessarily interchangeable." *Id.* ¶ 32.

Significantly, Defendants' experts did not present expert medical testimony regarding the pharmacological substitutability of Ovcon 35. Dr. Dickey's report consists of a discussion of the medical and pharmacological differences in oral contraceptives and is not

"intended solely to contradict or rebut evidence" presented by Defendants' experts. More to the point, Dr. Dickey's opinions indisputably could and should have been offered on December 11th as part of the States' affirmative case.[5]

If Plaintiffs had wished to introduce an expert medical analysis of the interchangeability of CHCs to support their case on product market definition, they had the opportunity to do so on December 11th. Indeed, Plaintiffs' economist opined on the very issue that Plaintiffs now try to couch as "rebuttal" evidence by Dr. Dickey. *See, e.g.*, Expert Report of Daniel L. Rubinfeld, ¶13 ("[I]t appears that patients switch out of Ovcon and into other oral contraceptives *primarily for clinical reasons*.") (emphasis added). Dr. Dickey's report is merely an attempt to bolster Plaintiffs' case in chief. It is not a rebuttal to Defendants' experts.

The belated introduction of a new expert, new conclusions, and new evidence at issue here is exactly the type of gamesmanship Rule 26 attempts to prevent. Parties are not allowed to "lie in wait" with their true experts and opinions, only to release them in a manner designed to deny the opposing party a meaningful chance to examine the evidence and respond. *See Minebea*, 231 F.R.D. at 6 (*citing Keener v. U.S.*, 181 F.R.D. 639, 641 (D. Mont. 1998)) (prohibiting patent licensee from submitting untimely "supplemental" expert report that was, "in several respects, a substantial 'refinement' of the original report, containing new or different material and providing additional information to support specific elements of [plaintiff's] case").

Accordingly, Dr. Dickey's report should be stricken as untimely. There is no justification for the States' delay in its filing and Defendants are unfairly prejudiced by late notice of this new expert's testimony. As the Advisory Committee states, the purpose of the expert disclosure rules is to allow "opposing parties . . . a reasonable opportunity to prepare for

---

[5] Defendants requested the disclosure of Dr. Dickey's retainer agreement, but Plaintiffs have not yet complied.

effective cross examination and perhaps arrange for expert testimony from other witnesses." 1993 Advisory Committee Notes to Rule 26(2).  By introducing an entirely new form of expert testimony, the opinion of a medical professional, so late in the expert discovery process (one that did not directly rebut the econometric evidence of Defendants' experts), Plaintiffs have attempted to curtail an effective critique of Dr. Dickey's testimony.

## CONCLUSION

For the reasons set forth above, Defendants respectfully request that this Court strike the expert report of Dr. Richard Dickey.  In the alternative, Defendants request leave to file a surrebuttal expert report to respond to Dr. Dickey's report within fifteen (15) days of the taking of Dr. Dickey's deposition.

January 18, 2007                              SIMPSON THACHER & BARTLETT LLP

/s/ Peter C. Thomas
_____

Peter C. Thomas (D.C. Bar # 495928)
601 Pennsylvania Avenue, N.W.
North Building
Washington, D.C. 20004
(202) 220-7700
(202) 220-7702 (fax)

Charles E. Koob, *pro hac vice*
425 Lexington Avenue
New York, New York 10017-3954
(212) 455-2000
(212) 455-2502 (fax)

*Counsel for Warner Chilcott Defendants*