IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| STATE OF COLORADO, et al.,<br><br>                      Plaintiffs,<br><br>     v.<br><br>WARNER CHILCOTT HOLDINGS<br>COMPANY III, LTD., et al.,<br><br>                      Defendants. | Civil Action No. 1:05-CV-02182<br><br>Judge Colleen Kollar-Kotelly |

**REPLY MEMORANDUM IN FURTHER SUPPORT OF WARNER CHILCOTT'S
MOTION TO STRIKE THE EXPERT REPORT OF RICHARD P. DICKEY**

Defendants Warner Chilcott Holdings Company III, Ltd., Warner Chilcott Corporation, Warner Chilcott (US) Inc., and Warner Chilcott Company, Inc. (together, "Warner Chilcott" or "Defendants"), respectfully submit this reply memorandum of law in further support of their motion to strike as untimely the expert "rebuttal" report of Dr. Richard P. Dickey (hereinafter "Dickey Report") or, alternatively, for leave to file a report in response in order to avoid unfair prejudice to Defendants.

**INTRODUCTION**

Dr. Dickey was retained over nine months prior to the date for the simultaneous exchange of opening reports fixed by the Court. Nonetheless, the Plaintiff States chose not to submit an opening report by Dr. Dickey. In this antitrust litigation, the basic question of the relevant "market definition"—as to which the Plaintiff States bear the burden of proof—was clearly "in play" when opening reports were first exchanged. Indeed, the Plaintiff States conceded as much by sponsoring market definition opinions by their economist, Professor

Rubinfeld. If they believed that "medical" expert testimony was also relevant to the issue of market definition, the Plaintiff States had no right to withhold a report by Dr. Dickey.

Predictably, the Plaintiff States seek to justify their maneuver by arguing that Dr. Dickey's opinion is offered to "rebut" the testimony of Warner Chilcott's experts. *See* Pls.' Opp. Br. 3. However, even the most cursory review of Dr. Dickey's report shows that this assertion is incorrect. Besides a general reference to the reports of Defendants' experts at the very beginning and end of his report, Dr. Dickey does not actually purport to rebut a single specific opinion or analysis offered by them. In fact, he ignores Defendants' experts, failing wholly to mention them, much less their opinions or analyses, in Section III of his report (*see* pages 4 through 10 and corresponding footnotes). ***That is very far from a rebuttal report within the meaning of Rule 26 of the Federal Rules.*** In short, Dr. Dickey was asked to submit an expert report that was a "rebuttal" in title only. Accordingly, his belated and untimely report should be stricken or, at the very least, Defendants should be granted the opportunity to respond to it.

## ARGUMENT

It bears repeating that the purpose of the Federal Rules mandating the advance disclosure of expert materials during discovery is to "prevent unfair surprise at trial and to permit the opposing party to prepare rebuttal reports . . . ." *Minebea Co. v. Papst*, 231 F.R.D. 3, 5-6 (D.D.C. 2005) (*citing Coles v. Perry*, 217 F.R.D. 1, 4 (D.D.C. 2003)); *see* 1993 Advisory Committee Notes to Rule 26(2). Parties are not given tactical leeway to withhold the identity and opinions of the experts they retain to testify at trial as the Plaintiff States did here.[1] Full

---

[1] Dr. Dickey was retained in this case over nine months before the Federal Trade Commission and Plaintiff States filed his report. *See* Pls.' Opp. Ex. J (Declaration of Garth W. Huston, ¶ 5). On January 15, 2007, Warner Chilcott requested the production of the engagement letters and copies of all invoices billed to Plaintiffs in connection with

disclosure is required to allow an opponent to prepare an effective assessment of each expert's opinions. Anything less than full disclosure invites exclusion pursuant to Rule 37(c) of the Federal Rules of Civil Procedure.

I.  **Dr. Dickey's Report Should Be Stricken As Untimely And Contrary To The Expert Discovery Rules, Which Permit Rebuttal Evidence *Solely* To Contradict Or Rebut Warner Chilcott's Experts**

The Plaintiff States exclusively and mistakenly rely on cases concerning the appropriateness of rebuttal testimony *at trial* in an attempt to characterize Dr. Dickey's report as proper rebuttal under these circumstances.[2] Although Dr. Dickey's report, on its face, was plainly destined for use in the Plaintiff States' *direct case*, the order of proof at trial is not at issue here. The question, instead, is whether the Plaintiff States have complied with Rule 26's requirements for expert *discovery*. Clearly they have not. Whatever the ultimate order of proof at trial, the Plaintiff States do not even suggest, *as required by the expert discovery rules*, that Dr. Dickey's testimony is offered "*solely* to contradict or rebut" the testimony of Warner Chilcott's experts. *See* Fed. R. Civ. P. 26(a)(2)(C) (emphasis added). Even a casual reading of Dr. Dickey's report demonstrates that his opinions—which were plainly offered in support of the

---

the work of Dr. Dickey. *See* 1/15/07 Letter from A. Rizzi to D. Laiho (attached hereto as Exhibit A). The Plaintiff States have failed to respond to this request.

[2] *See United States v. Chrzanowski*, 502 F.2d 573 (3d Cir. 1974) (finding that the government could introduce an additional fact witness *at a criminal trial* to offer testimony regarding the defendant's *modus operandi* that would rebut the defendant's character witnesses); *Martin v. Weaver*, 666 F.2d 1013 (6th Cir. 1981), *cert. denied*, 456 U.S. 962 (1982) (overturning a trial court's decision to exclude the testimony of an eye witness to an accident *at a civil trial* where the testimony was introduced to rebut evidence offered by the defendant in support of his contributory negligence affirmative defense); *Benedict v. United States*, 822 F.2d 1426 (6th Cir. 1987) (reversing the court's exclusion of expert rebuttal testimony *at trial* given that exclusion would have denied the plaintiff the opportunity to rebut the testimony of an entirely new type of medical doctor—an epidemiologist—introduced by the government defendant, but noting that it *was* within the trial court's discretion to exclude the plaintiff's evidence to the extent that it was offered to bolster the plaintiff's case-in-chief).

Plaintiff States' *affirmative* case on market definition—were hardly offered for the *sole* purpose of contradicting or rebutting the opinions presented by Warner Chilcott's experts. In fact, aside from a general reference to the Defendants' experts in the introductory and concluding paragraphs of his report, Dr. Dickey does not actually attempt to rebut any specific opinion or analysis that they offered in the body of his report.

To the extent the Plaintiff States claim that Dr. Dickey was—without saying so—offering testimony to rebut the opinions of Warner Chilcott's economists, a closer look at the Dickey Report shows that he actually agreed with or did not dispute the opinions the Plaintiff States rely upon to justify their submission of his expert medical testimony. The Plaintiff States cite the following testimony of Dr. Addanki and Professor Grabowski, proffered by the economists to explain the nature of competition among combined hormonal contraceptives ("CHCs"):

- "[A]ll CHCs share a common indication: to lower the risk of becoming pregnant" and "are not distinguishable in terms of efficacy in lower this risk." Expert Report of Sumanth Addanki (hereinafter "Addanki Report") at 14; Pls.' Opp. Br. 4 & nn.9-10.
- "[I]t is not clear that side effects across CHCs were substantially different or even connected to a particular attribute of the product." Addanki Report at 15; Pls.' Opp. Br. n.12.
- "All CHC products have similar labeling and have been recognized by the FDA as being equally efficacious and having very similar safety profiles." Report of Professor Henry G. Grabowski (hereinafter "Grabowski Report"), ¶ 25; Pls.' Opp. Br. n.10.
- "CHCs . . . all contain a combination of ethinyl estradiol and a progestin." Grabowski Report, ¶ 25; Pls.' Opp. Br. n. 11.

In essence, Warner Chilcott's economists merely describe common CHC attributes and views of the FDA and market participants, and opine that "product differentiation does not meaningfully constrain the choice among CHCs, and decision-makers can, and do, substitute among many

different CHCs." Addanki Report at 14; *see also* Grabowski Report, ¶ 25 ("The extent of product differentiation varies across pharmaceutical drug categories and the CHC drug category is one where the extent of product differentiation is limited.").

Significantly, despite the Plaintiff States' assertions to the contrary, Dr. Dickey does *not* contradict or rebut any of these contentions. Indeed, he states:

- "*It is correct* that, broadly speaking, most oral contraceptives have similar active ingredients (typically being composed of some ration of one of a number of different progestins and an estrogen) and similar FDA labels (i.e., indications, efficacy, warnings, and side effects)." Dickey Report, ¶ 12 (emphasis added).
- "*It is also true* that all or almost all oral contraceptives are equally good at preventing pregnancy when used properly." *Id.* (emphasis added).

Furthermore, Dr. Dickey agrees that "there may be a number of different oral contraceptive pills a physician could have started a patient on, or in theory could switch a patient to." Dickey Report, ¶ 29. Accordingly, it is hard to imagine how the *only* opinions Dr. Dickey offers in response to Warner Chilcott's experts "disprove or contradict the evidence presented by an opposing party." Pls.' Opp. Br. n.7 (citing Black's Law Dictionary).

**II.     At The Very Least, Warner Chilcott Should Be Permitted To Submit An Expert Report To Rebut The New Type Of Testimony Belatedly Offered By The Plaintiff States To Avoid The Undue Prejudice To Defendants**

The Plaintiff States do not dispute that their tactical decision effectively undermines Warner Chilcott's opportunity to critique the medical expert that had been retained over nine months before expert discovery in this case began—an opportunity explicitly afforded to Warner Chilcott under the expert discovery rules. The Plaintiff States not only fail to present any reason that would excuse them from the sanction contemplated by Federal Rule of Civil Procedure 37(c), but also unabashedly seek to thwart Warner Chilcott's efforts to ameliorate the prejudice that has resulted.

The Plaintiff States cite no authority—and indeed, there is none—that suggests Warner Chilcott should be denied a fair opportunity to respond to their opponent's evidence. As a result, Warner Chilcott should be given the opportunity denied to them by the Plaintiff States' gamesmanship and be allowed to respond to the new type of testimony offered by Dr. Dickey. Clearly, the Plaintiff States can claim no prejudice from such expert rebuttal testimony. Rather, all parties will simply be restored to the same position they would have occupied had the Plaintiffs States offered Dr. Dickey's affirmative opinions on the date for exchanging opening reports.

## CONCLUSION

For the reasons set forth above, Warner Chilcott respectfully requests that this Court strike the expert report of Dr. Richard Dickey as untimely. In the alternative, Warner Chilcott requests leave to file a surrebuttal expert report to respond to Dr. Dickey's report within fifteen (15) days of the taking of Dr. Dickey's deposition.

February 9, 2007                    SIMPSON THACHER & BARTLETT LLP

/s/ Peter C. Thomas

Peter C. Thomas (D.C. Bar # 495928)
601 Pennsylvania Avenue, N.W.
North Building
Washington, D.C. 20004
(202) 220-7700
(202) 220-7702 (fax)

Charles E. Koob, *pro hac vice*
425 Lexington Avenue
New York, New York 10017-3954
(212) 455-2000
(212) 455-2502 (fax)

*Counsel for Warner Chilcott Defendants*