UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| STATE OF COLORADO, *et al.*,<br><br>    Plaintiffs,<br><br>    v.<br><br>WARNER CHILCOTT HOLDINGS<br>COMPANY III, LTD., *et al.*,<br><br>    Defendants. | Civil Action No. 05-2182 (CKK)(AK) |

## MEMORANDUM ORDER

Pending before the Court are Defendants' Joint Motion to Compel Answers to Interrogatories and the Production of Documents ("Motion") [51], Plaintiff States' Response in Opposition ("Opposition") [54] and Defendant's reply ("Reply") [61]. For the reasons set forth below, Defendants' Motion is **DENIED**.

**I.     Introduction**

    **A.     Background**

Plaintiff States[1] bring this action against Warner Chilcott and Barr[2] (collectively "Warner

---

[1] The Plaintiff States are the states of Colorado, Maryland, Alaska, Arizona, Arkansas, California, Delaware, Florida, Idaho, Illinois, Iowa, Kansas, Louisiana, Maine, Michigan, Minnesota, Mississippi, Missouri, Nevada, New York, North Carolina, North Dakota, Ohio, Oklahoma, Oregon, Rhode Island, South Carolina, Tennessee, Texas, Utah, and Vermont, the commonwealths of Kentucky, Massachusetts and Virginia, and the District of Columbia. (Second Am. Compl. ("SAC") at 5-6.)

[2] "Warner Chilcott" refers collectively to the following Defendants: Warner Chilcott Holdings Company III, Ltd., Warner Chilcott Corporation, Warner Chilcott (US) Inc., and Warner Chilcott Company Inc. "Barr" refers to Defendant Barr Pharmaceuticals, Inc.

Chilcott and Barr" or "Defendants"), alleging that these two pharmaceutical companies entered into an agreement not to compete ("Agreement") that constituted a *per se* violation of Section 1 of the Sherman Act, 15 U.S.C. § 1, and state antitrust laws. (*See* Second Am. Compl. ("SAC") [81] ¶¶ 73-143; *see also*, *e.g.*, Opp'n at 8-9 (arguing that the Agreement should be subject to *per se* treatment).) According to Plaintiff States, the Agreement between the Defendants prevented Barr from marketing a cheaper generic version of Ovcon, a branded oral contraceptive sold by Warner Chilcott. (*See id.* ¶¶ 38-61.)

### B. Present Discovery Dispute

Defendants served each of the Plaintiff States with document requests and interrogatories seeking, *inter alia*, data concerning payments made by State Medicaid programs for combined hormonal contraceptives, including Warner Chilcott's Ovcon.[3] (Mot. at 5-6.) Plaintiff States

---

[3]Specifically, Defendants requested:

> All documents and data compilations, including reports, recommendations, memoranda, studies and analyses, prepared by, used by, prepared for or received by the Plaintiff State relating to government programs, including, but not limited to: (a) any payments made by the Plaintiff State for oral contraceptives or combines hormonal contraceptives, or (b) the reimbursement of third parties by the Plaintiff State for the purchase of oral contraceptives or combined hormonal contraceptives.

(Mot. Ex. 9 (Defs.' First Req. for Prod. of Docs. to the State of Colo. at No. 13).) Defendants also requested that the Plaintiff States:

> Identify by month, if possible, and if not, by quarter or year, from 2000 to date: (a) all combined hormonal contraceptives products, both brands and generics, for which your state has either purchased or for which your state has reimbursed some or all of the costs of purchase by third-parties: (b) the number purchased or reimbursed of each of the combined hormonal contraceptives identified in response to subsection (a) of this Interrogatory; (c) the price per unit paid by your state for each of the combined hormonal contraceptives identified in response to the subsection (a) of this Interrogatory; and (d) the total dollars paid for each of the combined hormonal contraceptives identified in response to subsection (a) of this Interrogatory.

(continued...)

objected to these requests, claiming that such data was not relevant to any claim or defense, not reasonably calculated to lead to the discovery of admissible evidence and, as the State Medicaid agencies were not represented by the State Attorneys General in this action, was not in their possession, custody or control. (*See* Mot. Ex. 5 (Pl. States' Objs. and Resps. at Gen. Obj. No. 13, Response to Req. Nos. 11-13 & Response to Interrog. No. 6).)

Following unsuccessful attempts at a compromise, Defendants filed the instant Motion, seeking to compel Plaintiff States to produce the requested Medicaid reimbursement data. In the alternative, Warner Chilcott and Barr request that the Court compel Plaintiff States to "cooperate in good faith with Defendants to obtain the requested data in a timely manner." (Mot. at 13-14.)

## II.   Discussion

The pleadings before the Court contain two major points of contention: *first*, whether the Medicaid data is relevant and, *second*, whether Defendants may obtain such data through discovery requests made to the State Attorneys General.

### A.   Relevancy

The scope of discovery is broad. Rule 26(b)(1) of the Federal Rules of Civil Procedure permits "discovery regarding any matter, not privileged, that is relevant to the claim or defense of any party[.]" This discovery need not be admissible at trial if it "appears reasonably calculated to lead to the discovery of admissible evidence." Fed. R. Civ. P. 26(b)(1).

Defendants plan to use the Medicaid data to show that, *inter alia*, "many, if not most, of

---

(...continued)
(Mot. Ex. 10 (Defs.' First Set of Interrogs. to the State of Colo. at No. 6).)

the Plaintiff States' Medicaid agencies would actually have paid ***more*** for [a] . . . generic equivalent of Ovcon 35 than for Ovcon 35 had Defendants not entered into the Agreement." (*See id.* at 2 (emphasis in original).) According to Warner Chilcott and Barr, the data would thus be relevant to: (1) their affirmative defenses that the Agreement at issue "had no adverse impact on competition or consumers[,]" (Reply at 4; *see also* Mot. at 5) and (2) "the central issues of this case, *i.e.*, what impact, if any, does entry of a generic product have on the prices of competing branded and generic alternatives in the combined hormonal contraceptive market." (*See* Mot. at 2, 3, 9-11; Reply at 1, 3.) Defendants also argue that, at a minimum, the data is relevant to "showing that Plaintiff States' arguments in favor of applying *per se* (rather than Rule of Reason) treatment are simply wrong."[4] (Reply at 4; *see also* Mot. at 10.)

Plaintiff States set forth two principal grounds for their position that the Medicaid data is irrelevant: *First*, the State Attorneys General bring this suit in their *parens patriae* capacity, seeking injunctive relief arising from harm to the States' "general economies." (*See* Opp'n at 6-8.) They do not represent the interests of State Medicaid agencies, nor do they seek damages based on harm to any individual entity such as a Medicaid agency. (*See id.*) *Second*, because the Agreement at issue was anticompetitive *per se*, Defendants cannot use "lower prices for Medicaid agencies" as a defense. (*See id.* at 8-9 (citing *Arizona v. Maricopa County Medical Society*, 457 U.S. 332 (1982).)

---

[4] Warner Chilcott and Barr also assert that Plaintiff States' contention of irrelevance "is belied by their own discovery requests relating to the very same data." (Mot. at 11.) According to Defendants, Plaintiff States have requested Medicaid-related data from both Defendants and several non-party pharmaceutical companies. (*Id.* at 7.) Plaintiff States respond that they only requested such data "to refute defendants' irrelevant claims" and will withdraw these requests if Defendants withdraw theirs. (Opp'n at 7.)

The Court agrees with Defendants that the Medicaid data it seeks is relevant. The data, if used to show that many of the State Medicaid agencies would have actually paid more for generic Ovcon than for branded Ovcon (had there been no Agreement), would be relevant to rebutting Plaintiff States' fundamental claim that the Agreement was anticompetitive. (*See* SAC ¶ 63.) Also, Plaintiffs' claim that the Agreement should be given *per se* treatment does not foreclose Warner Chilcott and Barr from gathering evidence in an effort to demonstrate that another line of analysis (*i.e.*, Rule of Reason) would be more appropriate.[5]

For the same reasons, the Medicaid data would also be relevant to Defendants' affirmative defenses that the Agreement at issue "had no adverse impact on competition or consumers." (Reply at 4.) It is of no moment that Plaintiff States do not represent the Medicaid agencies or allege specific harm to them. Lower prices for Medicaid agencies could still be offered to show a lack of harm to them as a large class of "consumers."

**B.    Whether Defendants May Obtain the Medicaid Data through Discovery Requests Made to the State Attorneys General**

*1.    The State Medicaid Agencies as Parties to This Action*

Defendants argue that, because the State Attorneys General purport to bring this action on behalf of their respective States, Defendants should be able to obtain the Medicaid data at issue through discovery requests made through the offices of the State Attorneys General. (Mot. at 4.) According to Defendants, "[b]y choosing to bring a civil action in federal court in the name of the sovereign states, the Plaintiff States . . . purposely avail themselves of the sovereign power of

---

[5] To the knowledge of this Court, the trial court has not yet determined whether it will treat the Agreement as a *per se* violation of the Sherman Act or apply Rule of Reason analysis. *See* 10/03/2006 Minute Order (denying without prejudice Plaintiff States' Motion for Leave to File Per Se Motion for Summary Judgment).

their States for offensive purposes and should not be allowed to do an 'about-face' for discovery purposes, thereby blocking the production of relevant evidence." (Mot. at 13.)

The main case that Defendants cite for this proposition is *United States v. AT&T*, 461 F. Supp. 1314 (D.D.C. 1978).  In that case, the United States Department of Justice (DOJ) brought a Sherman Antitrust Act claim against AT&T and other telecommunications corporations.  The defendants served the DOJ with Rule 34 requests seeking documents in the possession of various federal agencies.  The DOJ objected to these discovery requests, arguing that only it—and not any other federal agency—was a party to the suit against the defendants.  The district court held that the defendants could obtain documents in this manner from certain non-independent federal agencies.  In reaching its conclusion, the court noted that the action "as its caption indicates, was brought not on behalf of the Department of Justice but on behalf of the United States of America."  *See AT&T*, 461 F. Supp. at 1333.

In their Opposition, Plaintiff States argue that because they bring this action through the independent statutory authority of their State Attorneys General, and not on behalf of or as attorneys for State Medicaid agencies, they cannot be required to produce the requested data.[6] (Opp'n at 1.)

Plaintiffs contend that *AT&T* supports *their* position and not that of Defendants. (Opp'n at 5.)  According to Plaintiffs, although the *AT&T* court allowed Rule 34 requests seeking documents from *non-independent* federal agencies, it declined to compel DOJ to produce documents in the possession of *independent* federal agencies, including the Federal

---

[6]Plaintiff States concede that the Attorneys General for Alaska and the District of Columbia do not have the same degree of independence as do their counterparts in other states. *See* discussion, *infra*, at Section II-B-2.

Communications Commission (FCC). (*Id.*) Plaintiffs quote:

> In short, both as a conceptual and as a practical matter, the Federal Communications Commission is free from executive control and not answerable to instructions from the President or the Attorney General. To hold it to be a part of the "plaintiff" herein would not only contradict over forty years of legal history, but would effectively leave the conduct of this lawsuit, and perhaps of other actions brought by the government, vulnerable to a virtual veto by one or more independent regulatory agencies.

(Opp'n at 5 (quoting *AT&T*, 461 F. Supp at 1336).)

In further support of their view, Plaintiff States cite *State of New York v. Amtrak*, 233 F.R.D. 259 (N.D.N.Y. 2006). In that case, the New York Department of Transportation (DOT) brought a breach-of-contract suit against Amtrak on behalf of the State of New York. During the course of the litigation, a dispute arose when Amtrak sought Rule 34 discovery from the Office of the State Comptroller (OSC), an agency independent from the DOT and the rest of the state's executive branch. The court denied Amtrak's motion to compel the discovery, holding, *inter alia*, that the OSC was not a party to the suit. *See Amtrak*, 233 F.R.D. at 263-265.

Plaintiff States conclude that, like the FCC *vis-a-vis* the DOJ in *AT&T*, and the OSC *vis-a-vis* the DOT in *Amtrak*, the State Medicaid agencies are independent from the offices of their respective State Attorneys General and should not be required to respond to routine discovery requests made in this case. (*See* Opp'n at 6.)

Following the reasoning of *Amtrak*, the Court agrees with Plaintiff States that the State Medicaid agencies are not to be treated as parties to this action for the purposes of discovery. However, the instant case is unlike *Amtrak* in one key aspect: here the Plaintiffs (*i.e.*, the State Attorneys General) are independent of executive control, and not the agency in possession of the discovery (*i.e.*, the Medicaid agencies). (*See* Reply at 7 n.5.) The Court finds this to be a

7

distinction without a difference. *Amtrak* firmly supports the view that, where two government agencies are neither interrelated nor subject to common executive control, they will not be aggregated together for purposes of discovery. *See* 233 F.R.D. at 264 (finding that DOT and OSC "are not interrelated agencies, do not have a similar mission, and are situated at different spectrums of New York State governance"). Such is the case here. Although the Medicaid agencies may be subject to control by their Governors, the State Attorneys General are not subject to discipline or removal by their Governors and bring suit under their own authority.[7] (*See* Opp'n at 2-4.) In the view of the Court, such a relationship between Attorney General and Governor would significantly lessen the ability of the Attorneys General to enlist their Governors to direct the Medicaid agencies to produce documents.

More fundamentally, the Court also notes that, like the *Amtrak* court, it will not aggregate separate state governmental agencies without a strong showing to the contrary by Defendants. *See* 233 F.R.D. at 264 ("For reasons of federalism and comity, we give great deference to the State and its Legislature to define how governmental entities are to be separate and distinct and how they relate to one another as a whole; this is 'uniquely an exercise in state sovereignty.'") (quoting *Lyes v. City of Rivera Beach, Fla.*, 166 F.3d 1332, 1343-44 (11th Cir. 1999)). Here, Warner Chilcott and Barr have not made any showing of how, state by state, the office of the Attorney General and the Medicaid agency relate to one another such that, for discovery purposes, they may treated as the same entity.

### 2. Alaska and the District of Columbia

Plaintiff States have conceded that Alaska and District of Columbia do not have the same

---

[7]*See* note 6, *supra*.

degree of independence from executive control as do the Attorneys General in the other States. To illustrate, they explain that the Attorneys General for Alaska and the District of Columbia: (1) are not independently elected but are appointed by their respective Governor or Mayor (Opp'n at 2 n.2&3); (2) are subject to removal or discipline by their respective Governor or Mayor (*id.* at 2 n.4); and (3) do not have independent statutory authority to commence antitrust litigation on behalf of their respective State or District (*see* Opp'n at 2 n. 2-4; *id.* at 4 n. 8).

Based on these concessions, Defendants request that, at the very least, the Court compel the Attorneys General of Alaska and the District of Columbia to produce the requested Medicaid data. (Reply at 9 n.6.)

The Court declines to except Alaska and the District of Columbia from its finding that the State Medicaid agencies are not parties to this action. As stated above, the Court will not aggregate state agencies without a strong showing to the contrary by Defendants. Here, although Plaintiff States have conceded that Alaska and the District of Columbia enjoy a lesser degree of independence from executive branch control in their respective States, the Court is not satisfied that Defendants have affirmatively and thoroughly demonstrated that, for these purposes, these two State Medicaid agencies are to be treated as parties to the action.[8]

       3.       *Control of the Medicaid Data*

In their Reply, Warner Chilcott and Barr contend that "whether the Plaintiff States' Medicaid agencies are named 'parties' is beside the point." (Reply at 2.) They then chart a different course, arguing that the offices of the State Attorneys General have "control" of the

---

[8] Also, for the reason set forth in Section II-B-3, *infra*, Defendants have not demonstrated that the Attorneys General of Alaska or the District of Columbia have "control" over the requested data.

State Medicaid data within the meaning of Fed. R. Civ. P. 34(a) (requiring parties to produce all discoverable documents that are in their "possession, custody, or control").[9] Defendants rely upon the rule of law that, for the purposes of Rule 34(a), "control" includes "the legal right or practical ability to obtain the documents." (Reply at 6. (citing *Riddell Sports Inc. v. Brooks*, 158 F.R.D. 555, 558 (S.D.N.Y. 1994).)

Warner Chilcott and Barr assert that the State Attorneys General, as the States' chief law enforcement officers, have the "legal right" to obtain Medicaid data. Defendants cite state statutes of Virginia and New York which appear to require other state public officials to provide "information and assistance" to their respective Attorneys General upon request. (*See* Reply at 8 (citing N.Y. Gen. Bus. Law § 343; Va. Code Ann. § 59.1-9.10).) The Court finds these statutes are an insufficient basis upon which to conclude, across the board, that the State Attorneys General have a legal right to obtain documents from their respective State Medicaid agencies upon request. The Court also notes that Defendants have not provided any case law interpreting the statutes they did cite, nor did they provide statutory support for all States involved in the litigation.

Defendants also argue that the Attorneys General have demonstrated a "practical ability" to obtain the Medicaid data. In support, they cite several entries from Plaintiff States' privilege

---

[9] Defendants also cite two cases to support the proposition that documents in the possession of other government agencies are subject to Rule 34 requests where the government as a whole has a substantial interest in the litigation. (Reply at 6 (citing *Compagnie Francaise D'Assuarnce Pour Le Commerce Extereur v. Phillips Petroleum Co.*, 105 F.R.D. 16 (S.D.N.Y. 1984); *Ghana Supply Comm'n v. New England Power Co.*, 83 F.R.D. 586 (D. Mass. 1979)).) As did the *Amtrak* court, this Court declines to follow the broad pronouncement set forth in these cases, as "not only would such a discovery mandate be unduly burdensome and cumbersome but totally untenable and outside the spirit of the Federal Rules." *Amtrak*, 233 F.R.D. at 266.

log that describe documents either containing or referring to Medicaid data.  For example, Warner Chilcott and Barr cite "an e-mail from the Iowa Department of Human Services to the Iowa Attorney General regarding 'Ovcon Medicaid Data reimbursement amount.'" (Reply at 8.)

Plaintiff States admit that some of the State Attorneys General communicated with and obtained reports from their respective Medicaid agencies.  (Opp'n at 4.)  They explain that the Attorneys General undertook such communications in anticipation of possibly representing the State Medicaid agencies in their own lawsuits against Defendants.  (*Id.*)  According to Plaintiffs, however, ultimately "the Attorneys General did not undertake representation of such agencies as plaintiffs in this litigation . . . [but] proceeded only pursuant to their independent statutory authority to enforce the antitrust laws."  (*Id.*)

Although some State Attorneys General may have obtained Medicaid data from their respective State Medicaid agencies, Defendants admit that they cannot speak to the circumstances under which such data was shared.  (*See* 3/1/2006 Hr'g Tr. at 2:50.)  It is possible that the Medicaid agencies would not have agreed to provide any data had they not anticipated bringing suit against Defendants in their own right.  As such, the Court finds that Warner Chilcott and Barr's smattering of references to privilege log entries does not adequately demonstrate a "practical ability" by Plaintiff States to obtain the data sought by Defendants.

    4.    *Cooperation by Plaintiff States*

As an alternative argument, Warner Chilcott and Barr request that the Court order Plaintiff States to cooperate with Defendants in obtaining the data from the State Medicaid agencies.  (Mot. at 13 n.9.)  This request must be denied.  Defendants do not cite any case law or rule in support of this proposition.  Moreover, such an order would seem to circumvent the

discovery provisions of the Federal Rules of Civil Procedure. As they have already done with ten State Medicaid agencies (*see* 3/1/2007 Hr'g Tr. at 3:10), Defendants may request the data through subpoenas issued pursuant to Fed. R. Civ. P. 45.

### III.   Conclusion

For the foregoing reasons, it is on this  __8th__  day of May, 2007 hereby

**ORDERED** that Defendants' Motion to Compel is **DENIED**; and it is further

**ORDERED** that Defendants' request to compel Plaintiff States to "cooperate in good faith with Defendants to obtain the requested data in a timely manner" is **DENIED**.

**SO ORDERED**.

                                              /s/
                                        ALAN KAY
                                        UNITED STATES MAGISTRATE JUDGE