IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| MEIJER, INC., *et al.*,<br><br>      Plaintiffs,<br><br>   v.<br><br>WARNER CHILCOTT HOLDINGS<br>COMPANY III, LTD., *et al.*,<br><br>      Defendants. | Civ. Action No. 1:05-CV-02195-CKK |
| WALGREEN CO., *et al.*,<br><br>      Plaintiffs,<br><br>   v.<br><br>WARNER CHILCOTT HOLDINGS<br>COMPANY III, LTD., *et al.*,<br><br>      Defendants. | Civ. Action No. 1:06-CV-00494-CKK<br><br>Judge Colleen Kollar-Kotelly<br><br>**REDACTED PURSUANT TO<br>PROTECTIVE ORDER DATED<br>APRIL 4, 2006** |

[caption continued on following page]

**BARR PHARMACEUTICALS, INC.'S RESPONSE AND
COUNTER-STATEMENTS TO PLAINTIFFS' STATEMENT OF
MATERIAL FACTS AS TO WHICH THERE IS NO GENUINE ISSUE**

| | |
|---|---|
| CVS PHARMACY, INC., *et al.*, </br></br> Plaintiffs, </br></br> v. </br></br> WARNER CHILCOTT HOLDINGS COMPANY III, LTD., *et al.*, </br></br> Defendants. | Civ. Action No. 1:06-CV-00795-CKK |
| STATE OF COLORADO, *et al.*, </br></br> Plaintiffs, </br></br> v. </br></br> WARNER CHILCOTT HOLDINGS COMPANY III, LTD., *et al.*, </br></br> Defendants. | Civ. Action No. 1:05-CV-02182-CKK |

Pursuant to Local Civil Rules 7(h) and 56.1, and in support of its Opposition to Plaintiff States' Motion for Summary Judgment and Direct Purchaser Plaintiffs' Motion for Partial Summary Judgment, Defendant Barr Pharmaceuticals, Inc. ("Barr") submits its response and counter-statements to plaintiff's statement of purportedly undisputed facts.

**Plaintiffs' Statement ¶ 1:**

> Warner Chilcott is a pharmaceutical company that develops, manufactures, markets and distributes proprietary women's healthcare and dermatological pharmaceutical products. Warner Answer (*Colorado*) ¶ 2 (Ex. 1). Warner Chilcott markets Ovcon, a branded oral contraceptive, in the United States. *Id.* ¶ 4. Ovcon was approved by the Food and Drug Administration in 1976 and is not subject to patent protection. Warner Answer (*Meijer*) ¶ 32 (Ex. 2). Prior to Barr's launch of generic Ovcon, Ovcon was one of Warner Chilcott's highest revenue-producing products. *Id.* ¶ 36.

**Barr's Response to ¶ 1:**

Barr does not dispute that "Warner Chilcott is a pharmaceutical company that develops, manufactures, and markets proprietary women's healthcare and dermatology prescription pharmaceutical products," Warner Chilcott's Answer to State Pls.' 2d Am. Compl. (Pls.' App. Tab 1)[1] ¶ 2, or that "Warner Chilcott markets Ovcon, a proprietary prescription . . . oral contraceptive prescribed to women for the prevention of pregnancy." (*Id.* ¶ 4.) Barr also does not dispute that "Ovcon was approved by the FDA in approximately 1976, and . . . that Ovcon is not subject to patent protection." (Warner Chilcott's Answer to *Meijer* Compl. (Pls.' App. Tab 2) ¶ 32.) Barr further does not dispute that "Ovcon is, and has been, one of Warner Chilcott's highest revenue-producing products . . . ." (*Id.* ¶ 36.)

**Plaintiffs' Statement ¶ 2:**

> Barr is a pharmaceutical company that develops, manufactures, markets and distributes pharmaceutical products. Barr Answer (*Walgreen*) ¶ 14 (Ex. 3). In or about September 2001, Barr filed an Abbreviated New Drug Application (ANDA) with the FDA

---

[1] For the convenience of the Court, all tab references herein refer to Barr's Amended Appendix of Exhibits ("Am. App.") submitted in connection with Barr's Motion for Summary Judgment on State and Direct Purchasers' Federal Claims on Nov. 14, 2007, and Plaintiffs' Appendix of Exhibits ("Pls.' App.") submitted in connection with State Plaintiffs' Motion for Summary Judgment and Direct Purchaser Plaintiffs' Motion for Partial Summary Judgment on Nov. 14, 2007.

seeking approval to market an AB-rated generic version of Ovcon.
*Id.* ¶ 28.

**Barr's Response to ¶ 2:**

Barr does not dispute that "its regular business activities include the development, manufacture, and marketing of various pharmaceutical products." (Barr's Answer to Walgreen Compl. (Pls.' App. Tab 3) ¶ 14.) Barr also does not dispute that "it filed an ANDA with the FDA for approval to manufacture and sell an AB-rated generic version of Ovcon." (*Id.* ¶ 28.)

**Plaintiffs' Statement ¶ 3:**

On September 10, 2003, Warner Chilcott and Barr signed a Letter of Intent to enter into an agreement whereby Warner Chilcott would have the option to pay Barr $20 million and obtain, among other things, Barr's agreement not to launch its generic version of Ovcon for five years following FDA approval. *Id.* ¶ 38. On March 24, 2004, Warner Chilcott and Barr signed the agreements contemplated by the Letter of Intent and Warner Chilcott made an initial payment to Barr of $1 million. *Id.* ¶ 39. Under the terms of their Agreement,

**REDACTED**

**Barr's Response and Counter-Statement to ¶ 3:**

Barr does not dispute that "on September 10, 2003, Barr and Warner Chilcott executed a letter of intent to enter into an agreement that would give Warner Chilcott an option to enter into a five year exclusive license to Barr's Ovcon ANDA and a related supply agreement." (Barr's Answer to Walgreen Compl. ¶ 38.) Barr also states that, prior to the parties' execution of the letter of intent,

**REDACTED**

2

**REDACTED**

Barr also states that in addition to                                                                               Barr issued a public news release that explained in detail the terms of the parties' contemplated agreement. (*See* Sept. 11, 2003 Barr Press Release, *Galen to Receive Option to License Barr's Generic Ovcon® Oral Contraceptive*, WC00109052 - WC00109054 (Am. App. Tab 82).) Warner Chilcott and Barr's letter of intent

**REDACTED**

Barr does not dispute that "on March 24, 2004, Barr and Warner Chilcott executed an option agreement implementing the terms of the parties' letter of intent, and . . . that Barr was paid $1 million in consideration for the option by Warner Chilcott." (Barr's Answer to Walgreen Compl. ¶ 39; Barr's Statement of Material Facts ¶ 16.) Barr disputes the remaining statements contained in paragraph 3, and states that §§ 2.4 - 2.6 of the Agreement cited by Plaintiffs speak for themselves. Barr states, however, that under the terms of the Agreement, Warner Chilcott had 45 days from the date of FDA approval of Barr's ANDA to exercise an option that would grant Warner Chilcott a five-year exclusive license to sell the product under the ANDA. (News Release, *Barr's Generic Ovcon-35 Tablets Approved* (April 23, 2004), attached as Ex. E.) In addition, Barr states that Warner Chilcott was required to pay Barr $19 million at the time of the exercise of the option. (*Id.*)

3

Barr further states that at the time that Warner Chilcott and Barr entered into the License and Supply Agreements, Warner Chilcott had a supply agreement with BMS, the company from which it purchased Ovcon 35. (*See* Meijer Consol. Am. Compl. ¶ 34, Walgreen Compl. ¶ 23; CVS Compl. ¶ 17;

        **REDACTED**        Barr's Statement of Material Facts ¶¶ 6-7.) However,

    **REDACTED**        Barr's Statement of Material Facts ¶ 8, and also

        **REDACTED**

        Barr's Statement of Material Facts ¶ 9.) Because of

        **REDACTED**

Barr's Statement of Material Facts ¶¶ 10-12.)

**Plaintiffs' Statement ¶ 4:**

> On April 22, 2004, the FDA granted final approval of Barr's ANDA for generic Ovcon. Barr Answer (*Walgreen*) ¶ 42. The next day, on April 23, 2004, Barr announced its intent to begin immediately marketing generic Ovcon under the trade name Balziva if Warner Chilcott chose not to exercise its option under the Agreement. News Release, *Barr's Generic Ovcon-35 Tablets Approved* (April 23, 2004) (Ex. 5). On May 6, 2004, Warner Chilcott exercised its option and paid Barr the remainder of the promised $20 million payment. Barr Answer (*Walgreen*) ¶ 45.

**Barr's Response and Counter-Statement to ¶ 4:**

Barr does not dispute that "[o]n April 22, 2004, the FDA approved Barr's ANDA to produce and market generic Ovcon." (Barr's Answer to Walgreen Compl. ¶ 42.) Barr also does not dispute that Barr stated that "[i]f Galen [did] not exercise its option, following the 45-day period, Barr intend[ed] to market the product as a generic under the trademark name Balziva™," Ex. E, "subject to certain risks and uncertainties in making a generic Ovcon commercially available." (Barr's Answer to Walgreen Compl. ¶ 44.) Barr further does not dispute that, "on or about May 6, 2004, Warner Chilcott exercised the option for an exclusive license and supply," *id.* ¶ 45, and, "per the terms of the License and Supply Agreement, paid Barr $19 million for the rights to its ANDA." (Barr's Statement of Material Facts ¶ 19.)

**Plaintiffs' Statement ¶ 5:**

> Upon receiving the remaining $19 million from Warner Chilcott, Barr was obligated to sell its approved generic Ovcon product exclusively to Warner Chilcott and was prohibited from marketing the product in competition with Warner Chilcott for five years in the United States. Barr Answer (*Walgreen*) ¶ 46;

REDACTED

**Barr's Response to ¶ 5:**

Barr does not dispute that, under the terms of the Agreement, Barr was "obligated to supply Warner Chilcott exclusively with product produced under Barr's ANDA on generic Ovcon." (Barr's Answer to Walgreen Compl. ¶ 46.) Barr disputes the remaining statements contained in paragraph 5 of Plaintiffs' Statement, and states that

REDACTED                                                                cited by

5

Plaintiffs speak for themselves. Barr states, however, that under the terms of the Agreement, Warner Chilcott could exercise an option that would grant it a five-year exclusive license to sell the product under the ANDA. (*See* Ex. E.) In addition, Barr states that Warner Chilcott was required to pay Barr $19 million at the time of the exercise of the option. (*Id.*)

Furthermore, Barr states that Ovcon 35 competes with a number of other oral contraceptives and is virtually identical to several oral contraceptives that were marketed at the time Warner Chilcott and Barr entered into an exclusive supply agreement. (*See*

**REDACTED**

CVS Pls.' RFA Resp. (Am. App. Tab 24) at 108-15; Meijer Pls.' RFA Resp. (Am. App. Tab 25) at 126-32; Walgreen Pls.' RFA Resp. (Am. App. Tab 26) at 70-74 (admitting that Aranelle, Leena, Modicon, Brevicon, Necon .5/35, Necon 1/35, Necon 10/11, Necon 7/7/7, Norinyl 1/35, Nortrel 0.5/35, Nortrel 1/35, Nortrel 7/7/7, Ortho Novum 1/35, Ortho Novum 7/7/7, and Tri-Norinyl, contain active ingredients identical to those of Ovcon 35, and contain similar dosages of these ingredients); *see also*

**REDACTED**

Barr's Statement of Material Facts ¶¶ 20-26.)

**Plaintiffs' Statement ¶ 6:**

      Prior to entering into their Agreement, both Barr and Warner Chilcott

**REDACTED**

**Barr's Response to ¶ 6:**

      Barr disputes the statements contained in paragraph 6. Barr states that the documents that plaintiffs selectively cited are

**REDACTED**

      The particular models that plaintiffs cite actually state that

**REDACTED**

However,   **REDACTED**

**REDACTED**

In addition, and as his deposition testimony plainly states, Roger Boissonneault merely testified that

**REDACTED**

Barr states that the document cited by plaintiffs, **REDACTED** speaks for itself. But Barr disputes that the document cited by plaintiffs, can be characterized as **REDACTED** As William Poll, the author of the e-mail cited by plaintiffs, testified,

**REDACTED**

**REDACTED**

**Plaintiffs' Statement ¶ 7:**

    In November 2005, the Plaintiff States and the FTC separately filed Complaints against Warner Chilcott and Barr, alleging that their Agreement constituted an antitrust violation. On September 25, 2006, the FTC filed a motion for preliminary injunction to prevent Warner Chilcott from withdrawing Ovcon 35 from the marketplace as it prepared to introduce Ovcon Chewable. On the same day, Warner Chilcott signed a waiver that terminated the exclusivity provisions of the Agreement. As a result of that waiver, Barr was free to market its FDA-approved generic version of Ovcon in the United States and, indeed, Barr promptly did launch its product under the trade name Balziva. News Release, *Barr Announces Warner Chilcott Waives Exclusive License for Ovcon 35* (Sept. 26, 2006) (Ex. 11).

**Barr's Response to ¶ 7:**

Barr does not dispute that the FTC filed a complaint against Warner Chilcott and Barr in November 2005 alleging that their agreement violated Section 5(a) of the FTC Act, *see* FTC Compl. at 14, two years after **REDACTED**

*see supra* Barr's Response to ¶ 3, or that the State Plaintiffs filed a complaint against Warner Chilcott and Barr in November 2005 alleging that they "engaged in conduct in violation of Section 1 of the Sherman Act . . . ." (*See* State Pls.' Compl. at 19.)

Barr also does not dispute that the FTC filed a motion for preliminary injunction on September 25, 2006. Barr further does not dispute that in September 2006, Warner Chilcott permanently waived all exclusivity provisions in its License and Supply Agreement with Barr.

REDACTED

CVS Pls.' RFA Resp. at 128; Meijer Pls.' RFA Resp. at 148, Walgreen Pls.' RFA Resp. at 83 ("[W]arner Chilcott executed a waiver, dated September 25, 2006, in which Warner Chilcott 'releases Barr from its obligations under Section 2.1 of the Supply Agreement to manufacture or supply any Licensed Product on an exclusive basis.'"); Barr's Statement of Material Facts ¶ 35.) Barr does not dispute that it was, therefore, free to manufacture and market a generic version of Ovcon 35.

REDACTED

Barr's Statement of Material Facts ¶ 36.) Barr also does not dispute that "[u]pon Warner Chilcott's waiver of exclusivity, Barr immediately launched its AB-rated generic version of Ovcon 35 in October 2006, Balziva®." (News Release, *Barr Announces Warner Chilcott Waives Exclusive License for Ovcon 35* (Sept. 26, 2006) (Pls.' App. Tab 11); Barr's Statement of Material Facts ¶ 37.)

**Plaintiffs' Statement ¶ 8:**

Barr launched Balziva at

REDACTED

**Barr's Response to ¶ 8:**

Barr disputes that the documents cited by plaintiff, REDACTED and REDACTED demonstrate that Barr launched Balziva at REDACTED In response, Barr states that the

**REDACTED**

Furthermore, because Warner Chilcott stopped distributing free samples of Ovcon 35 upon the introduction of Balziva, many consumers may pay more to purchase Ovcon 35 and its AB-rated generic alternatives; in other words, Balziva did not enter at a discount to the net price of Ovcon 35 at all.

**REDACTED**

**Plaintiffs' Statement ¶ 9:**

> The introduction to the market of Barr's lower-priced generic competitor to branded Ovcon resulted in a rapid and substantial shift in sales from branded Ovcon to the generic alternative. Warner Chilcott reported losing more than 80% of its branded Ovcon sales to the less expensive generic product in a matter of months. News Release, *Warner Chilcott Reports Operating Results for the Quarter Ended March 31, 2007 and Raises 2007 Full Year Guidance*, p.2 (May 11, 2007) ("The decline in Ovcon revenue was due to the introduction of a generic version of Ovcon 35 in late October 2006, which led to an 80.4% decline in filled prescriptions for Ovcon 35 compared to the same quarter last year") (Ex. 14).

**Barr's Response to ¶ 9:**

Barr does not dispute that the document paragraph 9 quotes states that "[t]he decline in OVCON revenue was due to the introduction of a generic version of OVCON 35 in late October 2006, which led to an 80.4% decline in filled prescriptions for OVCON 35 compared to the same quarter last year." (News Release, *Warner Chilcott Reports Operating Results for the Quarter Ended March 31, 2007 and Raises 2007 Full Year Guidance* (Pls.' App. Tab 14), at 2 (May 11, 2007).) Barr denies, however, plaintiffs' characterization of the documents and further states that the document speaks for itself.

In particular, Barr disputes that the decline in Ovcon sales was the result of only the introduction of a generic version of Ovcon 35. Specifically, because Warner Chilcott ceased distributing free samples of Ovcon 35 upon the introduction of a generic version, many consumers switch from Ovcon 35 to other branded oral contraceptives for which free samples are available.

**REDACTED**

**REDACTED**

Furthermore, because Warner Chilcott stopped distributing free samples of Ovcon 35 upon the launch of Barr's Balziva®, the combined unit sales of Ovcon 35 and AB-rated generics to Ovcon 35 (*i.e.*, Ovcon 35 plus Balziva® and Zenchent®) have declined. (*See*

**REDACTED**

**Plaintiffs' Statement ¶ 10:**

    The commerce at issue in this case is interstate commerce. Warner Answer (*Walgreen*) ¶ 17; Barr website, www.barrlabs.com ("Barr Pharmaceuticals is a global specialty pharmaceutical company that operates in more than 30 countries worldwide").

**Barr's Response to ¶ 10:**

    Paragraph 10 of Plaintiffs' Statement contains legal conclusions to which no response is required. Barr states in response that it "denies that it has engaged in any unlawful activity that has had a substantial effect upon interstate commerce." (Barr's Answer to Walgreen Compl. ¶ 17.)

13

Dated: December 19, 2007

Respectfully submitted,

*/s/ Karen N. Walker*

Karen N. Walker (D.C. Bar # 412137)
Mark L. Kovner (D.C. Bar # 430431)
Patrick M. Bryan (D.C. Bar # 490177)
Eunnice H. Eun (D.C. Bar # 500203)
KIRKLAND & ELLIS LLP
655 Fifteenth Street, N.W., Suite 1200
Washington, DC 20005
Tel. (202) 879-5000
Fax (202) 879-5200

*Counsel for Barr Pharmaceuticals, Inc.*